STATE of Wisconsin, Plaintiff-Respondent,

v.

James C. LINDSEY, Defendant-Appellant.†

Court of Appeals

*No. 95–3392–CR. Submitted on briefs May 14, 1996.—Decided July 16, 1996.*

(Also reported in 554 N.W.2d 215.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Park M. Drescher* of *Drescher & Drescher, S.C.* of Appleton.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Sally L. Wellman*, assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. James Lindsey appeals his judgment of conviction after a jury trial for second-degree sexual assault of a child, contrary to § 948.02(2), STATS., as a persistent repeater under § 939.62(2m)(b), STATS. Lindsey argues the trial court's imposition of the mandatory sentence of life in prison without the possibility of parole pursuant to § 939.62(2m)(b) is unconstitutional. He also argues he was denied due process when the trial court failed to afford him the right of allocution at sentencing.

At issue in this case is the constitutionality of § 939.62(2m)(b), STATS., commonly known as Wisconsin's "three-strikes" law, which mandates life imprisonment without parole for third-time serious felony offenders.[1] We conclude Lindsey has failed to prove

---

[1] It has been brought to this court's attention that the California Supreme Court recently concluded that its trial court judges may exercise their statutory authority to strike prior convictions that would qualify a defendant for life imprisonment under California's three strikes statute. We have examined the court's decision in *People v. Superior Court (Romero)*, 917 P.2d 628 (Cal. 1996), and conclude that it does not affect our decision in this case. A California statute authorizes a trial court to dismiss a criminal action "in furtherance of justice" on its own motion. *Id.* California courts have held that power includes the lesser power to strike factual allegations relevant to sentencing, such as the allegation that a defendant has prior felony convictions. *Id. Romero* concluded that although the California legislature has the power to withdraw the trial courts'

the statute is unconstitutional beyond a reasonable doubt. Additionally, we conclude that although the trial court erred when it failed to afford Lindsey the right of allocution at sentencing, there is no reasonable possibility that the trial court's error contributed to Lindsey's sentence and, therefore, the error was harmless. For these reasons, we affirm the judgment of conviction.

The facts are undisputed. Lindsey was convicted of second-degree sexual assault of a child as a persistent repeater. The two convictions used as prior strikes under § 939.62(2m)(b), STATS., were a 1981 conviction for armed robbery, contrary to § 943.32(2), STATS., 1979-80, and a 1987 conviction[2] for two counts of sex-

---

statutory power to dismiss in the furtherance of justice, it did not do so in its three strikes statute, and, therefore, trial courts retain that power and can exercise it in three strikes cases. *Id.* In Wisconsin, there is no statute that gives trial court judges the authority to dismiss criminal actions in furtherance of justice or to strike factual allegations relevant to sentencing. Additionally, in this case, the trial court did not attempt to dismiss Lindsey's prior strikes to avoid the mandatory sentence required under the statute and this opinion does not address whether trial courts have any power to do so. Accordingly, the California Supreme Court's analysis does not affect our decision here.

In addition, we also note that there are a variety of differences between the Wisconsin and California three strikes statutes. Most significantly, under the California statute, the final felony leading to the sentence need not be "violent" or "serious." *Id.* In Wisconsin, the three felonies leading to the mandatory sentence of life without the possibility of parole must all have been "serious felonies" under § 939.62(2m)(a), STATS. Section 939.62(2m)(b), STATS.

[2] Although the prosecutor in the instant case alleged the 1987 crimes as a single conviction that would serve as a single

430

ual intercourse with a person over the age of twelve and under the age of sixteen, contrary to § 940.225(2)(e), STATS., 1987-88.[3] At sentencing, the trial court heard arguments on the applicability of the mandatory sentence and proceeded to sentence Lindsey without inquiring whether Lindsey had anything to say before sentence was pronounced.

Lindsey challenges the constitutionality of § 939.62(2m)(b), STATS., on three separate grounds, alleging it violates (1) the prohibition against cruel and unusual punishment; (2) the separation of powers doctrine; and (3) the equal protection doctrine. Lindsey also argues he was denied due process of law when the trial court failed to afford him the right of allocution required by § 972.14, STATS.

---

prior strike against Lindsey for purposes of § 939.62(2m)(b), STATS., the two counts technically constitute two convictions. This does not affect our decision in any way.

[3] Lindsey did not challenge at the trial court the status of his two prior felony convictions as serious felonies, as defined by § 939.62(2m)(a), STATS., that can be used as prior strikes pursuant to § 939.62(2m)(b), STATS. On appeal, he raises the issue only in a footnote, where he notes that the conviction used as the second strike was a violation of § 940.225(2)(e), STATS., 1987-88, which is not specifically identified in § 939.62(2m)(a), which lists by statute number crimes that are considered serious felonies. Lindsey argues that this court may therefore disregard the second strike and remand the case to the trial court for resentencing without the three strikes penalty enhancer. However, the State correctly notes that § 939.62(2m)(a)4 provides that serious felonies also include crimes that are comparable to those listed in § 939.62(2m)(a)1, 2 and 3. Lindsey does not dispute that the former § 940.225(2)(e), STATS., 1987-88, was the precursor to § 948.02(2), STATS., that they are comparable and that both would cover the conduct charged in the 1987 case. For these reasons, Lindsey's argument must fail.

## CONSTITUTIONALITY OF § 939.62(2m)(b), STATS.

The constitutionality of a statute is a question of law that we review independent of decisions by the trial court. *See State v. Borrell*, 167 Wis. 2d 749, 762, 482 N.W.2d 883, 887 (1992). A statute is presumed to be constitutional and will be held unconstitutional only if it appears so beyond a reasonable doubt. *State ex rel. Vanderbloemen v. Town of West Bend*, 188 Wis. 2d 458, 464, 525 N.W.2d 133, 136 (Ct. App. 1994). The burden of establishing the unconstitutionality of a statute is on the person attacking it, who must overcome the strong presumption in favor of its validity. *Borrell*, 167 Wis. 2d at 762, 482 N.W.2d at 887. In this case, Lindsey shoulders the burden of establishing that § 939.62(2m)(b), STATS., is unconstitutional. *See id.* Section 939.62(2m)(b), STATS., provides in relevant part:

> The actor is a persistent repeater if he or she has been convicted of a serious felony[4] on 2 or more

---

[4] Section 939.62(2m), STATS., provides the definition of serious felony:

(a) In this subsection, "serious felony" means any of the following:

1. Any felony under s. 161.41(1), (1m) or (1x) if the felony is punishable by a maximum prison term of 30 years or more.

2. Any felony under s. 940.01, 940.02, 940.03, 940.05, 940.09(1), 940.19(5), 940.21, 940.225(1) or (2), 940.305, 940.31, 941.327(2) (b)4., 943.02, 943.10(2), 943.23(1g), (1m) or (1r), 943.32(2), 946.43, 948.02(1) or (2), 948.025, 948.03(2)(a) or (c), 948.05, 948.06, 948.07, 948.08, 948.30(2), 948.35(1) (b) or (c) or 948.36.

3. The solicitation, conspiracy or attempt, under s. 939.30, 939.31 or 939.32, to commit a Class A felony.

4. A crime at any time under federal law or the law of any other state or, prior to April 28, 1994, under the law of this state that is comparable to a crime specified in subd. 1., 2. or 3.

separate occasions at any time preceding the serious felony for which he or she presently is being sentenced under ch. 973, which convictions remain of record and unreversed and, that of the 2 or more previous convictions, at least one conviction must have occurred before the date of violation of at least one of the other felonies for which the actor was previously convicted. It is immaterial that the sentence for a previous conviction was stayed, withheld or suspended, or that he or she was pardoned, unless the pardon was granted on the ground of innocence. *The term of imprisonment for the felony for which the persistent repeater presently is being sentenced under ch. 973 is life imprisonment without the possibility of parole.* (Emphasis added.)

## A. Cruel and Unusual Punishment

First, Lindsey argues that § 939.62(2m)(b), STATS., which mandates a sentence of life in prison without the possibility of parole for third-time serious felony offenders, is so grossly disproportionate as applied to him that it violates the prohibition against cruel and unusual punishment under the Eighth Amendment[5] to the United States Constitution and art. I, § 6,[6] of the Wisconsin Constitution.

With respect to Lindsey's challenge based on the Eighth Amendment, we recognize that for many years, courts applied a proportionality analysis which

[5] The Eight Amendment, which applies to states by virtue of the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660 (1962), provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

[6] Article I, § 6, of the Wisconsin Constitution provides: "Excessive bail shall not be required, nor shall excessive fines be imposed, nor cruel and unusual punishments inflicted."

required them to assess the following objective criteria: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for the commission of the same crime in other jurisdictions. *See Borrell*, 167 Wis. 2d at 776, 482 N.W.2d at 893 (citing *Solem v. Helm*, 463 U.S. 277, 290-92 (1983)).

However, our supreme court has noted that the United States Supreme Court's decision in *Harmelin v. Michigan*, 501 U.S. 957 (1991), casts serious doubt on the validity of the proportionality analysis for non-death penalty cases.[7] *See Borrell*, 167 Wis. 2d at 776-77, 482 N.W.2d at 893. Nonetheless, affording the defendant the benefit of the doubt, *Borrell* applied the analysis to the defendant's challenge to the constitu-

---

[7] In *State v. Borrell*, 167 Wis. 2d 749, 776-77, 482 N.W.2d 883, 893 (1992), our supreme court analyzed *Harmelin v. Michigan*, 501 U.S. 957 (1991), explaining:

> [T]he Court held that the imposition of a mandatory sentence of life imprisonment without the possibility of parole, without any consideration of mitigating factors, for a defendant convicted of possessing more than 650 grams of cocaine did not constitute cruel and unusual punishment. *Harmelin*, 111 S.Ct. at 2701 [501 U.S. at 994-95]. Writing for the Court and joined by Chief Justice Rehnquist, Justice Scalia rejected the use of the proportionality analysis outside the death penalty context and stated that *Solem* should be overruled in this respect. *Id.* at 2684-86 [501 U.S. at 962-65]. However, in a concurring opinion, joined by Justices O'Connor and Souter, Justice Kennedy stated that even outside the death penalty context a narrow proportionality principle has existed in Eighth Amendment jurisprudence for eighty years. *Harmelin*, 111 S.Ct. at 2702 [501 U.S. at 996] (Kennedy J., concurring in part). The dissenting justices, of course, also disagree with Justice Scalia.

For further discussion on *Harmelin, see Borrell*, 167 Wis. 2d at 776-77, 482 N.W.2d at 893-94.

tionality of a statute authorizing trial courts to set the parole eligibility date when a sentence is imposed. *See id*. We afford Lindsey the same benefit in his challenge to the constitutionality of § 939.62(2m)(b), STATS.

We begin with the first step in the *Solem* analysis: examination of the inherent gravity of the offense and the harshness of the penalty. Lindsey in this case was convicted of second-degree sexual assault of a child, § 948.02(2), STATS., which is a serious felony deserving of strong punishment, as our legislature has concluded by making the crime a class C felony and a "serious crime" under § 939.62(2m)(a)2, STATS. Moreover, the specific facts of this case reiterate the inherent gravity of the offense.

Here, Lindsey's victim was a fifteen-year-old mildly retarded girl who was being cared for by Lindsey's girlfriend while the girl's mother was at work. The girl testified that Lindsey, age thirty-four at the time of the offense, and his girlfriend laid down with the victim in a bed where she was resting. The victim testified Lindsey touched her breast, licked her chest and touched her vaginal area. Lindsey and his girlfriend also had sexual intercourse while the victim was lying in the bed with them. The victim told police shortly after the event that the incident upset her so much that while she was still at the house, she tried to use the telephone to call an adult friend, but Lindsey's girlfriend grabbed the telephone and stopped her from making the call. We agree with the State that this conduct was inherently serious and deserves strong punishment.

The crimes that constituted Lindsey's prior strikes were also serious felonies. In 1981, Lindsey was convicted of armed robbery after pleading no contest. According to the criminal complaint filed in that case,

Lindsey and another individual confronted two thirteen-year-old boys as the boys were walking to a parking ramp. Lindsey, holding a knife in his hand, told the boys to hand over their money and a watch. One boy told investigators that Lindsey said if the boys did not give him their money, he would make one of the kids look like a jigsaw puzzle. Lindsey's second strike was a 1987 conviction for two counts of sexual intercourse with a person over the age of twelve and under the age of sixteen, crimes to which Lindsey pled guilty. According to prior bad acts evidence offered at Lindsey's trial for the instant offense, one twelve-year-old victim told investigators that Lindsey had touched her breasts, vagina and buttocks, had placed his penis on her thigh, and had inserted his fingers into her vagina. A second victim told police Lindsey had sexual intercourse with her when she was fourteen years old.

The penalty in this case is undeniably severe: life in prison without possibility of parole. The penalty is severe because recidivist statutes like § 939.62(2m)(b), STATS., are designed to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. *See Rummel v. Estelle,* 445 U.S. 263, 284 (1980). "This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes." *Id.*

In *Rummel,* the United States Supreme Court examined the mandatory life sentence imposed on a defendant who was convicted under Texas' recidivist statute for obtaining $120.75 by false pretenses, a fel-

ony under Texas law. *Id.* at 266. The defendant had two prior felony convictions he incurred for fraudulently using a credit card to obtain $80 worth of goods or services and for passing a forged check for $28.36. The Court held the mandatory life sentence did not constitute cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

In light of our examination of United States Supreme Court precedent and Lindsey's offenses, we are not convinced that Lindsey's sentence raises the inference of gross disproportionality. Where no inference of gross disproportionality arises, the Court need not engage in intrajurisdictional and interjurisdictional analysis of sentences imposed for the same crime. *See Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring). Therefore, we need not examine the second and third parts of the *Solem* test: analysis of the sentences imposed on other criminals in the same jurisdiction and in other jurisdictions.[8] *See Borrell*, 167 Wis. 2d at 776, 482 N.W.2d at 893. Instead, we conclude for the reasons stated that Lindsey's sentence does not violate the Eighth Amendment.

---

[8] Even if this court wanted to engage in an analysis of the sentences imposed on other criminals in the same jurisdiction and in other jurisdictions, Lindsey has provided this court with only a single statute for comparison: Wisconsin's general repeater statute as it would apply to a defendant convicted of second-degree sexual assault of a child. Without specific information about sentences actually imposed in Wisconsin and other jurisdictions for the same crime, it would be difficult to engage in the analysis suggested in *Solem v. Helm*, 463 U.S. 277 (1983).

In Wisconsin, the test for determining if a sentence is cruel and unusual is whether the sentence is so excessive and unusual, and so disproportionate to the offense committed, as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances. *Steeno v. State*, 85 Wis. 2d 663, 669, 271 N.W.2d 396, 399 (1978). Our supreme court has recognized that punishment imposed under statutes providing for increased penalties for habitual criminals or subsequent offenders does not in itself constitute cruel and unusual punishment. *See Hanson v. State*, 48 Wis. 2d 203, 206, 179 N.W.2d 909, 911 (1970).

We conclude it is not cruel and unusual punishment under art. I, § 6, of the Wisconsin Constitution to sentence Lindsey to a mandatory sentence of life imprisonment without possibility of parole. As we noted in our earlier discussion regarding the Eighth Amendment, Lindsey's instant crime was serious and is deserving of strong punishment. Additionally, this is Lindsey's third serious felony conviction. The public conscience is not shocked by the imposition of greater penalties to those persons who repeatedly and flagrantly flout the law. *Steeno,* 85 Wis. 2d at 672-73, 271 N.W.2d at 400-01 (upholding constitutionality of § 343.44(2), Stats., 1975, which mandated one year imprisonment for the third conviction of driving after license revocation). For these reasons, we reject Lindsey's claim that § 939.62(2m)(b), Stats., violates the prohibitions against cruel and unusual punishment found in the Eighth Amendment to the United States Constitution and art. I, § 6, of the Wisconsin Constitution.

438

## B. Separation of Powers

Next, we consider Lindsey's argument concerning the separation of powers doctrine. Lindsey argues that the legislature's grant of sole sentencing discretion to the prosecution violates the separation of powers doctrine contained in the United States and Wisconsin Constitutions by completely removing all trial court sentencing discretion. Our analysis of this issue focuses on the separation of powers doctrine in Wisconsin, because Lindsey relies solely on Wisconsin law in his argument on the separation of powers issue.

The separation of powers doctrine is not expressly set forth in the Wisconsin Constitution but, rather, is embodied in the provisions that vest legislative, executive and judicial powers in three separate branches of government. *Borrell*, 167 Wis. 2d at 763, 482 N.W.2d at 887. The legislative power is vested in the senate and the assembly by virtue of art. IV, § 1, of the Wisconsin Constitution. *Id.* The executive power is vested in the governor and lieutenant governor by virtue of art. V, § 1. *Id.* at 763, 482 N.W.2d at 887-88. The judicial power is vested in the courts by virtue of art. VII, § 2. *Id.* at 763, 482 N.W.2d at 888. Our supreme court explained the operation and purpose of the separation of powers doctrine in *State v. Unnamed Defendant*, 150 Wis. 2d 352, 360-61, 441 N.W.2d 696, 699 (1989):

> Separation of powers prevents one branch of government from exercising the powers granted to other branches. Not all governmental powers, however, are exclusively committed to one branch of government by the Wisconsin Constitution. Those powers which are not exclusively committed may be exercised by other branches. In areas of shared power, however, one branch of government may exercise power conferred on another only to an

extent that does not unduly burden or substantially interfere with the other branch's essential role and powers. The doctrine serves to maintain the balance between the three branches, preserve their independence and integrity, and to prevent the concentration of unchecked power in the hands of one branch. (Citations omitted.)

■■■■

In short, Wisconsin's separation of powers principle prohibits a substantial encroachment by one branch of government on a function that has been delegated to another branch. *See State v. Dums*, 149 Wis. 2d 314, 321, 440 N.W.2d 814, 816 (Ct. App. 1989). With reference to prosecutorial discretion, Wisconsin case law has repeatedly held that the discretion whether to charge and how to charge vests solely with the district attorney. *Id.* It is also recognized that the district attorney's broad discretion to commence a prosecution is almost limitless. *Id.*[9]

■■■

We must apply these principles to the mandatory sentencing provision of § 939.62(2m)(b), STATS. A person convicted of a crime has no legal or constitutional right to parole. *Borrell,* 167 Wis. 2d at 764, 482 N.W.2d at 888. Any rights that a convicted defendant has with respect to parole are only those rights created by the legislature as a matter of grace or favor, and any such right exists only to the extent that the legislature provides. *Id.* The legislature not only can specify when a person convicted of a particular crime may be eligible for parole but can also disallow or abolish the right to parole for any or all crimes. *Id.*

---

[9] For further discussion on the constitutionality of prosecutorial discretion, see our discussion regarding Lindsey's equal protection challenge, *infra.*

Our supreme court observed in *Jones v. Manesewitz*, 267 Wis. 625, 633, 66 N.W.2d 732, 737 (1954):

> It is within the legislative power to give the courts discretionary powers, when certain conditions have been judicially determined to exist, *or to direct the court's action in the premises without discretion.* A familiar example is the latitude given the courts in sentencing a person judicially determined to have committed a murder in the second degree . . . contrasted with the statute's arbitrary direction that the court shall impose a life sentence if the verdict is for murder in the first degree. (Emphasis added.)

The power of the legislature to prescribe sentences was reaffirmed in *State v. Sittig*, 75 Wis. 2d 497, 249 N.W.2d 770 (1977), where our supreme court observed that there is no inherent power of the judiciary to absolutely determine the nature of the punishment. *Id.* at 499-500, 249 N.W.2d at 772. "In the absence of this inherent right, a court's refusal to impose a mandatory sentence or a sentence within limits prescribed by the legislature, constitutes an abuse of discretion by the court and also the usurpation of the legislative field." *Id.* at 500, 249 N.W.2d at 772. Accordingly, sentencing Lindsey to the mandatory term of life imprisonment without parole is not only permissible under the doctrine of separation of powers, it is required under the doctrine. *See id.*[10]

---

[10] Our conclusion that § 939.62(2m)(b), STATS., requiring trial courts to impose mandatory sentences on persistent repeaters, does not violate the separation of powers doctrine applies to cases where a trial court is sentencing a defendant found to be a persistent repeater. We do not address whether

## C. Equal Protection

Next, we examine Lindsey's argument that the creation of two classes of criminal defendants violates the equal protection clauses of the 14th Amendment to the United States Constitution[11] and art. I, § 1, of the Wisconsin Constitution.[12] Lindsey objects to the fact that prosecutors have the discretion, *see* § 973.12(1), STATS.,[13] to decide whether to charge a defendant as a

---

trial courts have the authority to strike prior convictions so as to disqualify a defendant as a persistent repeater, the issue that was before the California Supreme Court in *People v. Superior Court (Romero)*, 53 Cal.Rptr.2d 789, 917 P.2d 628 (Cal. 1996).

[11] The Fourteenth Amendment to the United States Constitution provides in relevant part:

> Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; *nor deny to any person within its jurisdiction the equal protection of the laws*. (Emphasis added.)

[12] Article I, § 1, of the Wisconsin Constitution provides in relevant part:

> **Equality; inherent rights.** All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed.

[13] Section 973.12(1), STATS., provides in relevant part:

> **Sentence of a repeater or persistent repeater. (1)** Whenever a person charged with a crime will be a repeater or a persistent repeater under s. 939.62 if convicted, any applicable prior convictions may be alleged in the complaint, indictment or information or amendments so alleging at any time before or at arraignment, and before acceptance of any plea. The court may, upon motion of the

persistent repeater under § 939.62(2m)(b), STATS. As a result, Lindsey argues, the same or a different prosecutor may decide not to charge another defendant with a record identical to or more threatening to the community than Lindsey's record as a persistent repeater. Lindsey argues that even if the legislature has the power to create a persistent repeater statute, its decision to give prosecutors the discretion to charge a defendant as a persistent repeater violates the equal protection clause because two classes of offenders will be created: those who are subject to the "three strikes" penalty and those who are not. Lindsey argues, "Creation of these two classes is arbitrary, capricious, unfair and violates the equal protection clauses of the United States and Wisconsin Constitution."

The equal protection provision of the Wisconsin Constitution is the substantial equivalent of its federal counterpart and will be interpreted consistently with that provision. *State v. McManus*, 152 Wis. 2d 113, 130, 447 N.W.2d 654, 660 (1989). Equal protection requires that there exist reasonable and practical grounds for the classifications drawn by the legislature. *Id.* Equal protection does not deny a state the power to treat persons within its jurisdiction differently; rather, the state retains broad discretion to create classifications so long as the classifications have a reasonable basis. *Id.* at 131, 447 N.W.2d at 660. The fact a statutory classification results in some inequity, however, does

district attorney, grant a reasonable time to investigate possible prior convictions before accepting a plea. If the prior convictions are admitted by the defendant or proved by the state, he or she shall be subject to sentence under s. 939.62 unless he or she establishes that he or she was pardoned on grounds of innocence for any crime necessary to constitute him or her a repeater or a persistent repeater.

not provide sufficient grounds for invalidating a legislative enactment. *Id.* Where, as here, a suspect classification is not alleged, the legislative enactment must be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate government interest. *Id.* at 131, 447 N.W.2d at 660-61.

Our supreme court has long recognized that statutes imposing a more severe punishment for a second or subsequent offense have invariably been held not to violate the constitutional prohibition against the denial of equal protection of the laws. *See State v. Meyer*, 258 Wis. 326, 337, 46 N.W.2d 341, 346 (1951). In *Meyer*, our supreme court noted that creating a classification for defendants with prior convictions constitutes a reasonable basis of classification in the punishment of criminals. *Id.*

The thrust of Lindsey's argument appears not to challenge the validity of repeater statutes, but instead the fact that prosecutors have the discretion to decide whether to charge a defendant as a persistent repeater. The United States Supreme Court rejected a nearly identical attack on prosecutorial discretion in *Oyler v. Boles*, 368 U.S. 448 (1962). William Oyler was convicted under West Virginia's habitual criminal statute, which provided a mandatory life sentence upon the third conviction of a crime punishable by confinement in a penitentiary. *Id.* at 449. Oyler argued that because prosecutors sought the severe penalty against defendants with records within the statutory standards in only a minority of cases, persons against whom the heavier penalty was enforced were denied equal protection. *Id.* at 455-56. The Court stated:

> [T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged.

*Id.* at 456.

Wisconsin courts have also recognized the great discretion prosecutors have to determine whether to commence a prosecution and which of several crimes to file against a defendant. *See State v. Karpinski*, 92 Wis. 2d 599, 616, 285 N.W.2d 729, 739 (1979) (holding that where same conduct could be prosecuted as a civil ordinance violation or a criminal statutory violation, prosecutor has discretion to file criminal charges or forward case to city attorney's office). The courts have rejected claims that broad prosecutorial discretion deprives defendants of equal protection of the laws, in the absence of circumstances that would constitute an abuse of discretion or discriminatory prosecution. *See id.* at 609-10, 285 N.W.2d at 735-36; *see also State v. Cissell*, 127 Wis. 2d 205, 224, 378 N.W.2d 691, 700 (1985) (no violation of equal protection where prosecutor charged more serious of two identical element crimes that had different penalties).

In Lindsey's case, the prosecutor had the discretion to charge Lindsey as a persistent repeater, as a repeater, without the repeater enhancers, or with no crime at all. Just as there is no equal protection violation where prosecutors have the discretion to charge a defendant as a repeater, *see Oyler*, 368 U.S. at 456,

there is no equal protection violation where prosecutors have the discretion to choose which repeater statute to charge. In the absence of any allegation that the prosecutor in Lindsey's case exercised his discretion under circumstances that would constitute an abuse of discretion or discriminatory prosecution, we reject Lindsey's equal protection challenge.

## THE RIGHT OF ALLOCUTION

Lindsey's final argument is that he was denied due process under the Fifth[14] and Fourteenth Amendments to the United States Constitution and art. I, §§ 1 and 8 of the Wisconsin Constitution when the trial court failed to afford him the right of allocution as required by § 972.14, STATS. It is unclear whether Lindsey seeks resentencing or an alternative form of relief. We conclude that whether the right of allocution is characterized as a constitutional right or a statutory right, the trial court's failure to afford Lindsey the right of allocution was harmless error and, therefore, we reject Lindsey's argument.

It is undisputed that the trial court at the sentencing hearing erred when it did not afford Lindsey the right of allocution provided by § 972.14(2), STATS., which states in relevant part: "Before pronouncing sen-

---

[14] The Fifth Amendment to the United States Constitution provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, *without due process of law;* nor shall private property be taken for public use, without just compensation. (Emphasis added.)

tence, the court shall ask the defendant why sentence should not be pronounced upon him or her and allow the district attorney, defense counsel and defendant an opportunity to make a statement with respect to any matter relevant to the sentence." The threshold issue presented is whether failing to afford a defendant the right of allocution constitutes a statutory error, a constitutional error, or both. The ultimate issue is whether this error was harmless.

First, we conclude that because § 972.14(2), STATS., clearly establishes a statutory right of allocution and because the trial court did not follow the mandate of § 972.14(2), the trial court committed a statutory error. Second, we observe that the United States Supreme Court has held there is no federal constitutional right to allocution. *See Hill v. United States*, 368 U.S. 424, 428 (1962). However, because of conflicting case law in Wisconsin, it is unclear whether there is a due process right to allocution under the Wisconsin Constitution.[15] We decline to resolve the conflicting case law on this

---

[15] Examples of cases that support or refute the proposition that the right of allocution is a due process right include: *State v. Borrell*, 167 Wis. 2d 749, 772, 482 N.W.2d 883, 891 (1992) (right of allocution is one of defendant's three due process rights at sentencing); *Nicholas v. State*, 49 Wis. 2d 678, 682, 183 N.W.2d 8, 10 (1971) (failure to ask defendant whether he has anything to say before sentencing is an error that is neither jurisdictional nor constitutional); *State v. Turner*, 200 Wis. 2d 168, 177, 546 N.W.2d 880, 884 (Ct. App. 1996) (right to allocution is purely statutory); *State v. Perez*, 170 Wis. 2d 130, 138, 487 N.W.2d 630, 633 (Ct. App. 1992) (right of allocution is one of three due process rights of a defendant at sentencing); and *State v. Varnell*, 153 Wis. 2d 334, 340, 450 N.W.2d 524, 527 (Ct. App. 1989) (at sentencing, one of defendant's due process rights is to be afforded the right of allocution).

447

issue because we conclude that even if there is a due process right to allocution, the trial court's constitutional error denying that right was harmless.

The harmless error doctrine, generally applied to trial errors, requires the appellate court to examine whether there is a reasonable possibility that the error contributed to the conviction. *See State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231-32 (1985). In the context of trial court error, the burden of proof is on the beneficiary of the error to establish that the error was not prejudicial. *Id.* at 544 n.11, 370 N.W.2d at 232 n.11. Constitutional violations are generally subject to a harmless error analysis. *State v. Flynn*, 190 Wis. 2d 31, 54, 527 N.W.2d 343, 352 (Ct. App. 1994). Before a constitutional error can be held harmless, a reviewing court must be able to declare a belief that it was harmless beyond a reasonable doubt. *State v. Boykins*, 119 Wis. 2d 272, 279, 350 N.W.2d 710, 714 (Ct. App. 1984).

Here, assuming arguendo that failing to ask Lindsey whether he wanted to speak at his sentencing was both a statutory error and a constitutional error, we conclude such error was harmless beyond a reasonable doubt. Because Lindsey was subject to a mandatory sentence of life imprisonment without parole, there is no possibility that anything Lindsey could have said at sentencing would have affected his sentence. Thus, there is no reasonable possibility that the trial court's failure to ask Lindsey if he wanted to speak contributed to Lindsey's sentence. For these reasons, the trial court's error, whether a statutory or constitutional one, was harmless.[16]

---

[16] Although we conclude that the trial court's failure to follow the mandate of § 972.14, STATS., was harmless error, we do

## CONCLUSION

For the foregoing reasons, we conclude Lindsey has failed to prove the unconstitutionality of § 939.62(2m)(b), STATS., beyond a reasonable doubt. Additionally, we conclude that although the trial court erred when it failed to afford Lindsey the right of allocution at sentencing, there is no reasonable possibility that the trial court's error contributed to Lindsey's sentence and, therefore, the error was harmless. The judgment of conviction is affirmed.

*By the Court.*—Judgment affirmed.

not intend to suggest that trial courts can ignore § 972.14 when sentencing persistent repeaters. The trial courts should continue to afford all defendants the right of allocution provided in § 972.14.