COURT OF APPEALS
DECISION
DATED AND FILED

September 16, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2022AP2228-CR**

Cir. Ct. No. 2019CF2917

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

---

STATE OF WISCONSIN,

      PLAINTIFF-APPELLANT,

  V.

KEITH C. KENYON,

      DEFENDANT-RESPONDENT.

---

APPEAL from order of the circuit court for Milwaukee County: DAVID L. BOROWSKI, Judge. *Reversed and cause remanded for further proceedings*.

Before Colón, P.J., Donald, and Geenen, JJ.

¶1     GEENEN, J.  The State alleges that Keith C. Kenyon had sexual intercourse with his eight-year-old niece, Leah.[1]  WISCONSIN STAT. § 948.02(1)(b) (2023-24)[2] states: "[w]hoever has sexual intercourse with a person who has not attained the age of 12 years is guilty of a Class B felony."  Section 948.02(1)(e) states: "[w]hoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years is guilty of a Class B felony."  Both statutes are classified as Class B felonies and carry a maximum of 60 years of imprisonment, but only § 948.02(1)(b) imposes a mandatory minimum sentence, specifically, a mandatory minimum of 25 years of initial confinement.  WIS. STAT. § 939.616(1r).

¶2     Kenyon was charged in an information for violating WIS. STAT. § 948.02(1)(b), and therefore, he faced a mandatory 25 years of initial confinement if convicted, even though his alleged conduct necessarily violated § 948.02(1)(e), which carries no mandatory minimum.  He moved to dismiss the information, arguing that the statutory scheme was unconstitutional as applied to him. Specifically, he asserted that the statutory scheme violated due process, equal protection, and separation of powers because the statutes unconstitutionally allow prosecutors to determine the defendant's sentence and enable the arbitrary enforcement of the law.  Kenyon also contrasted the facts of his case with over 30 other cases charged in Milwaukee County under § 948.02(1)(b) to support his argument that he is being arbitrarily and inconsistently charged as compared to

---

[1] We use the pseudonym "Leah" to refer to the victim in this case.  We also note that the parties' briefs on appeal differ with respect to Leah's age at the time of the alleged sexual assault, with the State writing that she was ten years old and Kenyon writing that she was eight years old. This disagreement has no effect on the issues presented on appeal, but we observe that the record supports the conclusion that Leah was eight years old at the time of the alleged sexual assault.

[2] Because the relevant statutes have not changed between the date of the alleged offense and the release of this opinion, all references to the Wisconsin Statutes are to the 2023-24 version.

significantly more aggravated cases. The circuit court agreed with Kenyon, dismissed the information, and the State appealed.

¶3 Kenyon raises important constitutional questions. In particular, we are concerned that the record in this case lends merit to Kenyon's argument and the circuit court's conclusion that the decision to charge Kenyon under WIS. STAT. § 948.02(1)(b) was made exclusively because Kenyon insisted on going to trial and was not motivated by legitimate concerns for the public welfare. *See State v. Edwardsen*, 146 Wis. 2d 198, 203, 430 N.W.2d 604 (Ct. App. 1988). Nonetheless, Kenyon does not adequately distinguish his case from the overwhelming weight of controlling authority that has previously considered and rejected Kenyon's arguments in similar contexts. Examining other instances of overlapping and identical criminal statutes with different penalty schemes, the United States Supreme Court, the Wisconsin Supreme Court, and this court have rejected arguments identical to those Kenyon makes now, and we are bound to apply those cases here. Accordingly, we reverse the circuit court's order granting Kenyon's motion to dismiss the information and remand the cause for further proceedings.

## BACKGROUND

¶4 The criminal complaint alleges that Leah stayed the night at Kenyon's house after he took her to a Disney on Ice show. She pretended to be asleep so that he would carry her to her cousin's room. Kenyon picked her up, carried her into the room, and laid her on the bed. Kenyon then unzipped Leah's onesie pajamas, moved her underwear to the side, wiped her vagina with a cloth, and licked her vagina. A few months later, after Leah's mother told Leah about plans for another sleepover at Kenyon's house, Leah disclosed the assault to her mother and then to police.

¶5 The State filed an information charging Kenyon with one count of first-degree sexual assault of a child, sexual intercourse with a person who has not attained the age of 12. WIS. STAT. § 948.02(1)(b). Kenyon filed a motion to dismiss the information, arguing that § 948.02(1) was unconstitutional as applied to him. He observed that the legislature created two subsections of first-degree sexual assault of a child which cover the same conduct alleged in the complaint and have the same maximum penalty, but only § 948.02(1)(b) carries a mandatory minimum penalty. Kenyon argued that the statutory scheme violated his due process right to be sentenced by a neutral magistrate because the statutory scheme amounted to "sentencing by prosecutor." Once the prosecutor decided to charge Kenyon under § 948.02(1)(b), the circuit court was deprived of the discretion to impose anything less than 25 years of incarceration regardless of the presence of mitigating factors and the absence of aggravating factors. Kenyon also argued that the statutes were unconstitutionally vague because there was no guidance in the statutory scheme that would prevent a prosecutor's arbitrary and discriminatory enforcement of one subsection versus the other.

¶6 The State argued that *United States v. Batchelder*, 442 U.S. 114, 123-24 (1979), confirmed that when a defendant's conduct violates more than one criminal statute, the State has the discretion to decide under which statute to charge the defendant, even if the two offenses have identical elements but carry different penalties. In his reply brief, Kenyon argued that none of the cases cited by the State, including *Batchelder*, dealt with a statutory scheme where one of the two overlapping statutes carried a mandatory minimum penalty. Kenyon claimed that when two criminal statutes overlap and one carries a mandatory minimum penalty, due process requires the legislature to establish "*some* factors to constrain the

4

discriminatory and arbitrary application of the law." The circuit court did not immediately decide Kenyon's motion, and the parties litigated other matters.

¶7 Before the circuit court decided his motion, Kenyon filed an amended motion to dismiss, adding a third argument. Kenyon asserted that the statutory scheme violated the separation of powers doctrine under the Wisconsin Constitution. He observed that the legislature has established mandatory minimum sentences for other crimes, but none of those offenses permit a prosecutor to charge the same conduct under a different statute that does not carry a mandatory minimum penalty. He claimed that by enacting two statutes that proscribe the same conduct, one of which carries a mandatory minimum of 25 years in prison and the other carrying no mandatory minimum at all, the legislature unconstitutionally delegated to the executive branch its exclusive power to set the penalty for the crime and its manner of enforcement. Additionally, Kenyon argued that the statutory scheme encroaches on a core function of the judiciary by delegating the court's sentencing power to prosecutors. He argued that by granting prosecutors the power to prescribe the ultimate sentence by its charging decision, the legislature also empowered prosecutors to coerce plea agreements and impose penalties on defendants who choose to exercise their constitutional right to a trial.

¶8 The State, in opposition, highlighted that statutes establishing mandatory minimum sentences are not unlawful. In fact, the State pointed out that in *State v. Lindsey*, 203 Wis. 2d 423, 440-41, 554 N.W.2d 215 (Ct. App. 1996), this court held that even when the legislature sets a particular punishment for a crime, e.g., life without parole, the statute still does not violate the constitutional separation of powers, even though it entirely eliminates a circuit court's sentencing discretion.

¶9      Prior to the circuit court's ruling on the motion, Kenyon filed a chart he compiled from CCAP[3] data showing all 34 cases where the Milwaukee County District Attorney's Office charged a violation of WIS. STAT. § 948.02(1)(b) between January 1, 2018, and July 1, 2022.  Kenyon asserted that the facts of his alleged crime were the least aggravated of any of the cases charged under § 948.02(1)(b).  For example, he states that all 34 cases involved penetration of some kind (e.g., digital or penile penetration of the victim's mouth, vagina, or anus, or involving penetration of those areas by an object), many cases involved children as young as four to six years of age, and some involved ejaculation by the defendant.  Thirty of the 34 cases were amended pursuant to a plea agreement to offenses that carried no mandatory minimum, and of those 30 cases, one defendant received probation, five were sentenced to three-to-seven years of imprisonment, 13 defendants received between eight and 12 years, five received between 13 and 15 years, and three received 16 to 22 years.

¶10      In contrast to these cases, Kenyon is alleged to have licked the outside of his eight-year-old niece's vagina on one occasion for a matter of seconds.  In short, Kenyon argued that the facts alleged in the criminal complaint are the least aggravated of all the cases detailed in the chart he filed, and no rational basis exists to explain why Kenyon is being charged inconsistently as compared to the other cases.

---

[3] Wisconsin's Consolidated Court Automation Programs are commonly known as CCAP. The term is used to refer to the internal electronic system used by the courts and clerks, the electronic filing system used by the lawyers and litigants, and the website of court records accessible to the general public.  "The online website reflects information entered by court staff." *Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522.  We may take judicial notice of the CCAP records.  *Id.*

¶11    The circuit court granted Kenyon's motion to dismiss, concluding that the statutory scheme violated due process and separation of powers. It highlighted the amendments to WIS. STAT. § 948.02(1) over the past 20 years, noting that § 948.02(1)(e) did not explicitly include "sexual intercourse" at the time § 948.02(1)(b) and WIS. STAT. § 939.616(1r) were created, and the court concluded that the current version of § 948.02(1), as applied to Kenyon, "gives the State unfettered discretion to choose between a prosecution under § 948.02(1)(b), which requires imposition of the mandatory minimum of 25 years of initial confinement under [§] 939.616(1r), and § 948.02(1)(e), which has no mandatory minimum term of confinement." It stated that "[t]he total absence of standards to govern the prosecutorial decision results in an arbitrary charging standard and deprives the court of its discretionary authority to consider mitigating factors and impose a sentence of less than 25 years of initial confinement."

¶12    Further, the circuit court took issue with the State's decision to charge Kenyon under WIS. STAT. § 948.02(1)(b) given the significant mitigating factors in the case, observing that no penetration of Leah's vagina is alleged, Kenyon did not expose his private parts, no threats were made, and Kenyon has no prior criminal record. It asserted that even the State was aware of the presence of mitigating factors because it offered to recommend a sentence of five-to-seven years of initial confinement if Kenyon agreed to forego his right to a trial and plead guilty to a charge under § 948.02(1)(e). The circuit court believed that the State uses the statutory scheme "as a bargaining chip to motivate defendants … to waive their right to a trial" and therefore "avoid a wholly disproportionate mandatory minimum penalty." The circuit court distinguished *Batchelder*, noting that *Batchelder* dealt with two overlapping statutes with different *maximum* penalties, whereas here, the two overlapping statutes have different *minimum* penalties.

7

¶13    The State appeals.

## DISCUSSION

¶14    Although framed as a challenge to due process, equal protection, and separation of powers, the issues presented on appeal can be distilled to the following question: whether the legislature can create two or more criminal statutes that prohibit the same conduct but only one of which carries a mandatory minimum penalty, and if so, what guidelines (if any) must the legislature include to limit a prosecutor's discretion to charge a violation of one statute as opposed to the other.[4] Kenyon argues that the legislature cannot establish such a scheme, at least without providing meaningful guidance to help prosecutors determine when it is appropriate to charge the offense with the mandatory minimum and when to charge the offense without the mandatory minimum.  To the extent such guidance exists, Kenyon argues that the decision to charge him under WIS. STAT. § 948.02(1)(b) violates both the legislative guidance and Milwaukee County's historical charging practices.

¶15    The seminal case on this issue is *United States v. Batchelder*. Presented in *Batchelder* were two overlapping provisions of the Omnibus Crime Control and Safe Streets Act of 1968.  *Id.*, 442 U.S. at 115.  Although not identical in every respect, both provisions prohibited convicted felons from receiving firearms, but one provision carried a maximum sentence of two years of imprisonment while the other carried a maximum sentence of five years of imprisonment.  *Id.* at 116-18.  The defendant argued that the statutes: (1) offended

---

[4] The Pennsylvania Supreme Court correctly observed that "[w]here it is alleged that a statute fails to provide sufficient guidelines to limit a prosecutor's discretion in enforcing the statute, there is frequently much overlap between the various constitutional challenges that are typical in such cases, i.e., equal protection, due process/vagueness, and improper delegation." *Com. v. Parker White Metal Co.*, 515 A.2d 1358, 1366 n.11 (Pa. 1986).  Thus, our analysis of any one of those three constitutional challenges will be relevant and applicable to the others.

8

due process and equal protection interests by affording excessive prosecutorial discretion, (2) were void for vagueness, and (3) constituted an impermissible delegation of congressional authority. *Id.* at 122-23.

¶16 With respect to vagueness, the Supreme Court acknowledged that "vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." *Id.* at 123. However, it concluded that the two provisions "unambiguously specify the activity proscribed and the penalties available upon conviction." *Id.* The Supreme Court reasoned that "[a]lthough the statutes create uncertainty as to which crime may be charged and therefore what penalties may be imposed, they do so to no greater extent than would a single statute authorizing various alternative punishments." *Id.* Thus, "[s]o long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied." *Id.*

¶17 With respect to equal protection, the Supreme Court reiterated the well-established rule "that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." *Id.* at 123-24. It rejected the argument that the statutory scheme at issue granted "unfettered" discretion to prosecutors because "[s]electivity in the enforcement of criminal laws is, of course, subject to constitutional constraints," e.g., if the enforcement is "based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* at 124-25, 125 n.9 (citation omitted). The Court also observed that a decision to prosecute under the five-year-maximum statute did not empower prosecutors "to predetermine ultimate criminal sanctions" because the decision to charge under the five-year-maximum statute "merely enables the sentencing judge to impose a longer prison sentence" than the

9

two-year-maximum statute would allow. *Id.* at 125. In other words, in *Batchelder*, the power to determine the ultimate criminal sanctions still rested with the sentencing judge, and in fact, prosecuting under the five-year-maximum provision allowed *more* sentencing discretion, not less.

¶18    Finally, the Supreme Court concisely rejected the argument that the statutory scheme impermissibly delegated to the executive branch the legislature's responsibility to fix criminal penalties. *Id.* It explained:

> The provisions at issue plainly demarcate the range of penalties that prosecutors and judges may seek and impose. In light of that specificity, the power that Congress has delegated to those officials is no broader than the authority they routinely exercise in enforcing the criminal laws. Having informed the courts, prosecutors, and defendants of the permissible punishment alternatives available under each Title, Congress has fulfilled its duty.

*Id.* at 126.

¶19    Wisconsin courts have both followed *Batchelder* and expanded it. In *State v. Karpinski*, the Wisconsin Supreme Court dealt with challenges to a statutory scheme where the same conduct was prohibited under both a state criminal statute and a civil municipal ordinance. *Id.*, 92 Wis. 2d 599, 601, 285 N.W.2d 729 (1979). The court observed that this was not a situation similar to *Batchelder* because the county district attorney did not have the option of choosing between criminal and civil enforcement. *Karpinski*, 92 Wis. 2d at 612-14. Rather, if the district attorney chose to proceed with a criminal prosecution, the case would remain with the district attorney. *Id.* at 612. If the district attorney chose not to prosecute, the case would be referred to the municipal city attorney, who would then independently determine whether there should be a prosecution under the city ordinance. *Id.* at 613. Thus, the defendant's argument related to prosecutorial

discretion was inapposite. However, the court cited favorably to *Batchelder* in its decision, reaffirmed the well-settled rule "that when an act violates overlapping, but not identical, criminal statutes the government may prosecute under either criminal statute so long as there is no discriminatory prosecution," and quoted WIS. STAT. § 939.65 which states: "If an act forms the basis for a crime punishable under more than one statutory provision, prosecution may proceed under any or all such provisions." *Karpinski*, 92 Wis. 2d at 610-11.

¶20    In *State v. Cissell*, our supreme court expanded the analysis in *Batchelder* to situations in which the criminal statutes are identical, not just overlapping, and concluded that the reasoning in *Batchelder* applied to the Wisconsin Constitution as well as the United States Constitution. *State v. Cissell*, 127 Wis. 2d 205, 218-24, 378 N.W.2d 691 (1985). The court reasoned that although the two statutes at issue in *Batchelder* were overlapping and not identical, the focus of the decision was on the parts that overlapped, i.e., the parts that were identical. It explained: "[T]he fact that the statutes were identical at the point of overlap and as applied to the facts of that case was decisive. The issues considered by the Supreme Court, including vagueness, excessive prosecutorial discretion, and impermissible delegation, all focused on the point of identity between the statutes." *Cissell*, 127 Wis. 2d at 219. "Overlapping statutes thus present the same issues as

identical statutes because the point of overlap essentially creates an identical statute situation."[5]  *Id.*

¶21    In *State v. Lindsey*, the defendant was convicted of second-degree sexual assault of a child as a persistent repeater.  *Id.*, 203 Wis. 2d at 429-31.  Being charged as a persistent repeater exposed the defendant to Wisconsin's "three-strikes" law, which mandated life imprisonment without parole for third-time serious felony offenders.  *Id.* at 429-30.  The defendant argued that the persistent repeater penalty enhancement statute violated the separation of powers and equal protection doctrines.  *Id.* at 429-31.  This court rejected the defendant's arguments.

¶22    With respect to separation of powers, the defendant claimed that the persistent repeater statute "remov[ed] all trial court sentencing discretion" in

---

[5] The dissent in *Cissell*, written by Justice Shirley Abrahamson, acknowledged that "broad prosecutorial discretion is an accepted part of our criminal justice system," but concluded "that the legislature's adoption of criminal statutes identical except for penalty is an unlawful delegation of power to the executive branch of government contrary to the separation of powers doctrine encompassed in the Wisconsin Constitution."  *State v. Cissell*, 127 Wis. 2d 205, 227, 378 N.W.2d 691 (1985) (Abrahamson, J. dissenting).  "[R]esting such unbridled discretion in the prosecuting attorney violates our concept of fundamental fairness and equal protection of the laws."  *Id.*  Justice Abrahamson criticized the majority for permitting "the legislature to adopt two or more criminal statutes identical in every respect except for the penalty provision without establishing criteria to guide the prosecutor in deciding under which statute an accused should be prosecuted."  *Id.*  She described such a statutory scheme as "delegation running riot."  *Id.* at 230 (quoting *Schecter Poultry Corp. v. United States*, 295 U.S. 495, 553 (1935) (Cardozo, J. concurring)).

Justice Abrahamson also criticized the majority on equal protection grounds, stating that the majority incorrectly discusses equal protection "as though the constitutional command protects only against discriminatory prosecution based upon race, gender, or other suspect classification." *Cissell*, 127 Wis. 2d at 231 (Abrahamson, J. dissenting).  "The equal protection guarantee is broader than the majority acknowledges," she says, because "[e]qual protection shields persons not only from 'suspect classifications' but from classifications that are not rational."  *Id.*  Justice Abrahamson concluded that the statutes at issue in *Cissell* violated equal protection because the legislature did not set forth in those statutes any rational basis to guide the prosecutor in determining when to charge one statute over the other.  *Id.*  "[F]airness requires that people should not arbitrarily be treated differently."  *Id.*

violation of the doctrine. *Id.* at 439. However, we observed that "'[i]t is within the legislative power to give the courts discretionary powers, when certain conditions have been judicially determined to exist, *or to direct the court's action in the premises without discretion.*'" *Id.* at 441 (quoting *Jones v. Manesewitz*, 267 Wis. 625, 633, 66 N.W.2d 732 (1954)) (emphasis in *Lindsey*).[6] Thus, where the legislature has prescribed a specific punishment for a crime, the doctrine of separation of powers not only permits, but requires that the court sentence the defendant accordingly. *Lindsey*, 203 Wis. 2d at 441.

¶23 With respect to equal protection, we explained that the Equal Protection Clause "does not deny a state the power to treat persons within its jurisdiction differently … so long as the classifications have a reasonable basis." *Id.* at 443. The defendant in *Lindsey* was not claiming that it was unreasonable for the legislature to prescribe more severe punishments for repeat offenders, but instead, complained that the prosecutor had sole discretion to decide whether to charge a defendant as a persistent repeater without meaningful guidance about when to do so. *Id.* at 444. We rejected the defendant's argument, explaining:

> [T]he prosecutor had the discretion to charge Lindsey as a persistent repeater, as a repeater, without the repeater enhancers, or with no crime at all. Just as there is no equal protection violation where prosecutors have the discretion to charge a defendant as a repeater … there is no equal protection violation where prosecutors have the discretion to choose which repeater statute to charge. In the absence of any allegation that the prosecutor in Lindsey's case exercised his discretion under circumstances that would constitute an abuse of discretion or discriminatory prosecution, we reject Lindsey's equal protection challenge.

---

[6] *But see* **Oehler v. State**, 202 Wis. 530, 536, 232 N.W. 866 (1930) (asserting that the legislature cannot fully divest a court of its sentencing discretion); **State v. Radke**, 2002 WI App 146, ¶16 n.12, 256 Wis. 2d 448, 647 N.W.2d 873 (acknowledging the tension between **Lindsey** and **Oehler**).

*Id.* at 445-46.

¶24 In our view, Kenyon has not distinguished these cases from his own. Although one could argue about whether WIS. STAT. § 948.02(1)(b) and (1)(e) are overlapping or identical crimes given that it is impossible to violate § 948.02(1)(b) without violating § 948.02(1)(e), *Cissell* held that it does not matter whether the challenged statutes are identical; *Batchelder* still controls. *Cissell*, 127 Wis. 2d at 218-24.

¶25 As we explained above, all of Kenyon's arguments have been previously considered and rejected in functionally identical contexts. WISCONSIN STAT. § 948.02(1) cannot be unconstitutionally vague because it "clearly define[s] the conduct prohibited and the punishment authorized[.]" *Batchelder*, 442 U.S. at 123. "Although the statutes create uncertainty as to which crime may be charged and therefore what penalties may be imposed, they do so to no greater extent than would a single statute authorizing various alternative punishments." *Id.* Section 948.02(1) cannot be held unconstitutional for violating the separation of powers doctrine when, in *Lindsey*, we acknowledged that the legislature is allowed to eliminate entirely a circuit court's sentencing discretion by setting forth a fixed punishment for a crime. *Id.*, 203 Wis. 2d at 441. *Cissell* and *Batchelder* likewise prohibit the conclusion that § 948.02(1) constitutes an unconstitutional delegation of legislative power to the executive branch because "'there is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements.'" *Cissell*, 127 Wis. 2d at 217 (quoting *Batchelder*, 442 U.S. at 125).

¶26     With respect to his equal protection argument, Kenyon relies heavily on the chart he filed in the circuit court detailing 34 recent cases where the Milwaukee County District Attorney's Office charged a violation of WIS. STAT. § 948.02(1)(b). On appeal, Kenyon included a supplemental chart detailing 89 cases charged as violations of § 948.02(1)(e) between January 1, 2018 and December 31, 2022, where the victim was younger than 12 years old. Approximately half of those cases could have been charged as violations of § 948.02(1)(b) because they involved sexual intercourse with a victim under 12, and in 21 of those cases, penetration was alleged. Almost all of these cases involved repeated assaults, and several involved more than one victim.

¶27     From these 89 cases, Kenyon highlighted three to illustrate the inconsistent and arbitrary decision to charge him under WIS. STAT. § 948.02(1)(b). In one case charged under § 948.02(1)(e), the defendant bribed the victim, licked her vagina repeatedly over five years beginning when she was five years old, and penetrated her anus with his penis. In another case charged under § 948.02(1)(e), the defendant "got on top" of the eight-year-old victim and "moved up and down" until he ejaculated. The defendant in that case also admitted to penetrating the victim's vagina with his penis. Finally, the third case involved the forced penile penetration of an 11-year-old victim during a home invasion.

¶28     These comparisons notwithstanding, Kenyon does not argue that the charging decision was made based on a suspect classification. *Cissell* made clear "that overlapping criminal statutes with different penalty schemes do not violate constitutional principles unless the prosecutor selectively bases the charging decision upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.*, 127 Wis. 2d at 215; *see also id.* at 222. The record contains no evidence of discriminatory prosecution.

15

¶29    Instead, Kenyon argues that the Milwaukee County District Attorney's Office is using the discretion granted to it by the statutory scheme in order to impose "trial penalties" on defendants like Kenyon who refuse to plead guilty and instead choose to exercise their constitutional rights.  There is very little controlling authority discussing what constitutes a "trial penalty."[7]  In *United States v. Jackson*, the Supreme Court examined the Federal Kidnapping Act, which imposed the death penalty "only to those defendants who assert[ed] the right to contest their guilt before a jury."  *United States v. Jackson*, 390 U.S. 570, 581 (1968).  It opined that "[t]he inevitable effect of any such provision, is of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial," and "[i]f the provision had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it would be patently unconstitutional."  *Id.* (footnote omitted).

¶30    This case is not like *Jackson*, which involved a statute with a trial penalty set forth explicitly in the text of the statute.  Instead, we find guidance in *State v. Edwardsen*.  In *Edwardsen*, we acknowledged that factors other than "legitimate concerns for the public welfare" might motivate a vindictive prosecutorial response to a defendant's exercise of a constitutional right—in Edwardsen's case, exercising his right to appeal and obtaining a retrial on previously decided issues.  *Id.*, 146 Wis. 2d at 203.  We recognized that "to punish a person because he has done what the law plainly allows him to do is a due process violation

---

[7] The National Association of Criminal Defense Lawyers defines a "trial penalty" as "the discrepancy between the sentence offered during plea negotiations and the sentence a defendant will face after trial[.]"  *The Trial Penalty: The Sixth Amendment Right to Trial on the Verge of Extinction and How to Save It*, NACDL (July 10, 2018), https://www.nacdl.org/getattachment/95b7f0f5-90df-4f9f-9115-520b3f58036a/the-trial-penalty-the-sixth-amendment-right-to-trial-on-the-verge-of-extinction-and-how-to-save-it.pdf.

of the most basic sort." *Id.* Accordingly, we stated "that a presumption of vindictiveness attaches to a prosecutor who increases charges when, as in the instant case, the [S]tate is pursing a second conviction for the same course of conduct following a defendant's successful appeal." *Id.*

¶31 It is difficult to understand why such a presumption would attach after a defendant's successful appeal and not during pretrial plea negotiations. We see very little practical difference in a prosecutor increasing the severity of the charges after a successful appeal and a prosecutor increasing the severity of the charges based on a defendant's refusal to plead guilty and insistence on taking the case to trial. There is no readily apparent reason why a presumption of vindictiveness would attach when a prosecutor increases the severity of charges based on a defendant's successful appeal and not during the original prosecution, where the threat of a harsher punishment for the same conduct is used to leverage a guilty plea. In both instances, it appears that the prosecutor penalizes a defendant by filing charges authorizing harsher punishment in direct response to a defendant exercising a constitutional right.

¶32 We do not have a satisfactory answer as to why a prosecutor's decision to increase the severity of the charges after a successful appeal would carry a presumption of vindictiveness while the same motivation (i.e., avoiding trial) would not carry this presumption if it was done prior to the first trial. Nonetheless, we find no case that stands for or even implicitly supports the proposition that a trial penalty is imposed when the State chooses to charge a defendant under the harsher of two identical or overlapping statutes prior to trial. This conclusion appears to contradict the overwhelming number of cases that hold that prosecutors have absolute discretion to decide what charge to bring when a defendant's alleged

17

conduct violates two or more identical or overlapping criminal statutes. Accordingly, we must reject Kenyon's equal protection argument.

## CONCLUSION

¶33     For the foregoing reasons, we reverse the circuit court's order granting Kenyon's motion to dismiss the information. We remand the cause for further proceedings.

*By the Court.*—Order reversed and cause remanded for further proceedings.

Recommended for publication in the official reports.