OEHLER, Plaintiff in error, vs. THE STATE, Defendant in error.

*October 17—November 11, 1930.*

*J. E. O'Brien* of Fond du Lac, for the plaintiff in error.

For the defendant in error there was a brief by *L. E. Gooding,* district attorney of Fond du Lac county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Gooding.*

FOWLER, J. The plaintiff in error, hereinafter called the defendant, was charged with murder. He interposed a plea of not guilty because insane and a plea of not guilty. Upon trial the court submitted to the jury the issue of insanity and several degrees of homicide. It is conceded by defendant's counsel that the evidence would support a verdict of

guilty of any degree submitted. The jury returned a verdict of guilty of manslaughter in the second degree and the court sentenced the defendant to "an indeterminate term in the state's prison from six to seven years."

(1) Error is assigned because the judge stated at one place in his instructions to the jury: "If upon the whole case you and each of you are convinced beyond a reasonable doubt that the defendant was insane at the time of the shooting, you will return the verdict not guilty because insane." It is contended that this puts the burden of proving insanity upon the defendant. But before the statement complained of was made the court had instructed the jury that if they were "satisfied by the credible evidence that at the time of the shooting the defendant was insane, or if after giving the evidence full, careful, and fair consideration there is in your minds a reasonable doubt as to defendant's sanity," they should find him not guilty because insane. This is conceded to be correct. The instruction complained of was given near the close of the charge to the jury, in reviewing the different verdicts that might be returned. At conclusion of the charge defendant's counsel immediately called to the court's attention that he had omitted to state, in such review, that if the jury had any reasonable doubt of the defendant's sanity they should acquit. The court then said to the jury, in substance, that if he had omitted so to say in connection with the verdict as to insanity he should have done so, and that "if there is any reasonable doubt as to sanity at the time in question you will give the benefit of that doubt to the defendant."

This court has held that where the court gives two conflicting instructions to a particular point, one correct and the other erroneous, it cannot be determined which the jury followed and the error will be presumed prejudicial. *Meyer v. Hafemeister,* 119 Wis. 539, 97 N. W. 165; *Colbert v. State,* 125 Wis. 423, 104 N. W. 61. But here the erroneous

instruction was immediately called to the attention of the court and the jury and the court corrected it. The correction was the last word of the court to the jury before they retired to consider the case. The correct instruction was thus emphasized and the correct rule called particularly to the attention of the jury. The typewritten charge was sent in to the jury. We are unable to determine from the record whether the last statement of the court was incorporated in it before it was sent in. If it was not, it should have been; and it would have been well to have corrected the charge by striking out the erroneous statement or adding to it a clause to correct it, either of which might readily have been done. But regardless of this, in view of what occurred, we are of opinion that the jury was not misled and the defendant was not prejudiced by the misstatement.

(2) The defendant assigns error on what occurred between the court and jury when the jury after retiring came into court for further instruction. The foreman said: "We have disagreed on some of the—on the first verdict, and are we allowed to pass on to the second?" This he restated as: "If we disagree on any one verdict are we allowed to pass on to the next one?" The court by inquiry ascertained that the foreman meant that if the jury had failed to agree on one verdict in taking the verdicts up for consideration in the order in which the court had taken them up in his instructions, the jury wanted to know whether they might consider the next verdict in such order, and the court told them that they might do so. We see no error in this. In the charge the court told the jury that the first question they would have to consider was that of insanity. He then instructed on that subject and then instructed on the other degrees of guilt submitted, beginning with murder in the first degree and took up the others in order of magnitude. But this did not preclude the jury from proceeding as the court told them they might.

(3) Error is claimed because the court received in evidence statements of the deceased as dying declarations. Statements of the victim of a homicide cannot be received as dying declarations unless they are made in belief of impending death. 1 Ruling Case Law, p. 544; 3 Wigmore, Evidence (2d ed.) § 1440; *State v. Law,* 150 Wis. 313, 334, 136 N. W. 803, 137 N. W. 457. Such belief, however, may be inferred not only from the statement of the deceased that he so believed, but from the nature of the wound and the fact that death did in fact follow shortly after the statement was made. All the circumstances should be considered. 3 Wigmore, Evidence (2d ed.) § 1442. Here the deceased was shot in the abdomen from a distance of ten feet three hours before the statement was made. His bowels were protruding, hanging down over his abdomen and bleeding. While making the statement he attempted to lift the cloth lying over him and pointed to his abdomen; he was practically pulseless; was cold and clammy; in state of great shock; perspiring profusely. He died the same day. He said at the time of making the declaration that he was badly hurt and knew that he might die. The statement was made in the operating room of a hospital with doctors and nurses present preparing for an operation. From all this and the statement of deceased it might reasonably be inferred that the deceased believed he would soon die. The trial judge received the statement. It is held in at least one jurisdiction that his decision is final. *Comm. v. Bishop,* 165 Mass. 148, 42 N. E. 560. In any case the decision of the trial judge is entitled to great weight. *Baker v. Comm.* 106 Ky. 212, 50 S. W. 54. However, if the statement was not properly receivable in the instant case, its receipt was not prejudicial as the fact stated therein, that the defendant shot the deceased in the abdomen, making the wound of which he died, was not in dispute and the other facts stated were in substance and effect admitted by the defendant in

his testimony. It is suggested in this connection that if objection to the receipt of statements of the·deceased as dying declarations is made before inquiry as. to the facts bearing upon their competency is entered upon, the inquiry should, be prosecuted in the absence of the jury, as is required in case of confessions, to the end that if they are rejected the jury will not have been influenced by them. *Jones v. State,* 184 Wis. 50, 198 N. W. 598.

(4) Error is assigned because testimony of Dr. Deerhake, superintendent of the Central Hospital for the Insane, as to the sanity of defendant, was received in evidence. This testimony was to the point that the defendant was not insane. On cross-examination the doctor stated that he meant "medical insanity" in saying the defendant was not insane. He was then asked if the defendant was "legally sane or legally insane" and answered that he .was "only acquainted with insanity, or medical or organic insanity." He gave his own definition of insanity, however, which was: "An abnormal condition of the mind characterized by many deviations, the chief ones being not knowing the difference between right and wrong." This definition shows that the doctor, whether he knew it or not, applied the test of legal insanity, which is "such a perverted condition of the mental and moral faculties as to. render the person incapable of distinguishing between .right and wrong." *Jessner v. State, ante,* p..184, 231 N. W. 634, 639. He further testified that the defendant was emotionally stable; harbored no delusions, was not hallucinated by either sight or hearing; was well .oriented; knew the time, place, and was acquainted with his surroundings. We are of opinion that this was clearly to the point that the defendant was not insane in the legal sense and rendered the doctor's testimony admissible.

(5) The last assignment of error is that the sentence imposed was not in accordance with sec. 54.03, Stats., which

provides that the form of the sentence shall be: "You are sentenced to the . . . for a general or indeterminate term of not less than (the minimum fixed by the court) years, and not more than (the maximum fixed by the court) years." The court's sentence was that the defendant "be punished by imprisonment . . . for an indeterminate sentence of from six to seven years." Sec. 340.17 fixes the penalty for manslaughter at not less than four nor more than seven years. The sentence of from six to seven years as pronounced is clearly enough equivalent to a sentence for a general or indeterminate term of not less than six years nor more than seven years, and it must be given effect as if imposed in the exact language of the statute.

The defendant raises the further point that the language of the statute implies that the court must in each case insert the minimum and maximum of the statute as the minimum and maximum of the sentence. This is not correct. The statute does not say that the limits shall be inserted as fixed by the statute. It says that they are to be inserted as fixed "by the court." To require insertion of them as fixed by the statute would entirely take from the courts the judicial function of fixing the punishment which quite likely was vested in them by the constitution according to the practice of the common law. A statute that attempted so to do would quite likely have to be held unconstitutional as intimated in *In re Pikulik*, 81 Wis. 158, 51 N. W. 261, in reference to a previous indeterminate sentence statute repealed before being brought before this court for review as to its constitutionality. The legislature in enacting the present statute carefully sought to avoid the constitutional question by expressly leaving it to the court to fix the extreme limits of the imprisonment and the defendant does not raise the constitutional question here.

*By the Court.*—The judgment is affirmed.