PEPPIES COURTESY CAB CO., David W. Jahnke, owner of Peppies Courtesy Cab Co., Keno Cab Co., Inc., James L. White, owner of Keno Cab Co., Inc., Peter Bogdanovic, Randy Lain, Richard Slemensky, Michael Jan Kohn, Debyra K. Cespuglio and Robin G. Davis, Plaintiffs-Appellants,

v.

CITY OF KENOSHA, a local government entity and Joseph H. Trotta, Chief of Police, City of Kenosha, Defendants-Respondents.

Supreme Court

*No. 90-1097. Oral argument September 6, 1991—Decided October 16, 1991.*

(Also reported in 475 N.W.2d 156.)

For the plaintiff-appellants there were briefs filed (in the Court of Appeals) by *William A. Pangman, Timothy J. O'Brien* and *William A. Pangman & Associates, S.C.,* Waukesha and oral argument by *Mr. O'Brien* and *William Pangman.*

For the defendants-respondents there was a brief filed (in the Court of Appeals) by *James W. Conway,* City Attorney, Kenosha and oral argument by *James W. Conway.*

STEINMETZ, J. The issue before the court is whether the city of Kenosha's ordinance No. 59–88, which was designed to regulate the appearance of taxicab drivers, is violative of the drivers' inherent rights of due

process and liberty interests guaranteed under the Wisconsin and United States Constitutions.[1] The case was decided by the trial court judge on stipulated facts. The court of appeals certified the case to this court and certification was accepted.

The stipulated facts are as follows. On October 3, 1988, the Kenosha common council enacted ordinance No. 59-88 under the authority of sec. 349.24, Stats. The ordinance states in part:

> The Chief of Police shall prescribe caps, uniforms and emblems to be worn by drivers of taxicabs and it shall be unlawful for the driver of a personal taxicab to neglect or refuse to wear the cap, uniform or emblem so prescribed by the Chief of Police. *Taxicab drivers shall exercise hygiene and grooming, including hair care, in a manner befitting a person who deals with the public.* (Emphasis added.)

Pursuant to this ordinance, the Kenosha Police Chief formulated a dress and grooming code for taxicab drivers which was put into effect December 2, 1988. The ordinance and corresponding dress and grooming code were created in response to two reports which addressed ways to improve the image of the city of Kenosha.[2] Both reports called for the promotion of industry, business and tourism. Furthermore, they recognized that in order to accomplish these objectives the city's image must improve.

The need for a taxicab driver dress and grooming code was established through observations and docu-

[1]*See* Wisconsin Constitution art. I, secs. 1, 11, 13 and 22; United States Constitution, amend. I and XVI.

[2]The two reports were the Kenosha Focus 2000 and the Kenosha Focus +1. The first was issued in 1987. The second was an update of the first and issued in 1988.

mentation of local cab driver appearance by the Kenosha Police Department and local officials. Specifically, there were complaints about dirty hair, men maintaining the length of their hair below their shoulders, soiled bandannas, dirty hats, tennis shoes with holes in them, t-shirts of fishnet material, and women wearing scanty shorts and dresses, as well as filthy tube top attire. One observer was quoted as saying that some of the drivers looked as if they had just "crawled out of bed." Those in favor of the code contended that it was necessary to help improve the city's image. Those opposed argued that such a code adversely affected the rights of cab drivers.

The circuit court judge decided that the Kenosha grooming code did not affect the fundamental rights of cab drivers. That court also applied the rational basis test to analyze due process and equal protection issues. Ultimately, the court upheld the challenged code on all grounds. Judge David Bastian stated: "There is little doubt that the objective of the City of Kenosha in trying to present a positive image is a legitimate governmental objective." This court holds that the challengers of Kenosha's ordinance No. 59-88 have proven there is no rational basis for its enactment.

Wisconsin statutes are presumed constitutional by the court. *See Laufenberg v. Cosmetology Examining Board,* 87 Wis. 2d 175, 181, 274 N.W.2d 618 (1979); *State ex rel. Real Est. Exam. Bd. v. Gerhardt,* 39 Wis. 2d 701, 711, 159 N.W.2d 622 (1968); *Courtesy Cab Co. v. Johnson,* 10 Wis. 2d 426, 432, 103 N.W.2d 17 (1960). However, a petitioner can overcome this presumption by proving that the statute is unconstitutional beyond a reasonable doubt. *Chicago & N.W.R. Co. v. La Follette,* 27 Wis. 2d 505, 521-22, 135 N.W.2d 269 (1965). It does not matter whether the court agrees with the wisdom or

merits of the law. Rather, the judiciary is concerned with whether petitioners can prove that a law "clearly contravenes some constitutional provision." *Id.* at 521, 135 N.W.2d 269.

Ordinances receive the same treatment of constitutional presumption as do statutes adopted by the state. In *State ex rel. Baer v. Milwaukee,* 33 Wis. 2d 624, 630, 148 N.W.2d 21 (1967), the court stated:

> '. . . [A]n ordinance is presumed to be constitutional and . . . the attacking party must establish its invalidity beyond a reasonable doubt. If there is any reasonable basis for its enactment, the ordinance must be sustained. Furthermore, this court will not interfere with a municipality's exercise of police power unless it is clearly illegal.'
>
> In short, a person who attacks an ordinance as unconstitutional must carry a burden of proof, beyond a reasonable doubt, that no reasonable basis exists for the enactment of the ordinance. (Footnotes omitted.)

Licensing and regulation of public service occupations is within the police power of the government. *Bisenius v. Karns,* 42 Wis. 2d 42, 54, 165 N.W.2d 377 (1969). It is for the legislature to determine what regulations, restraints or prohibitions are reasonably required to protect the public safety without the abrogation of basic and substantial individual liberty interests which would justify judicial intervention. *Laufenberg,* 87 Wis. 2d at 182, 274 N.W.2d 618. This is not to suggest that the legislature is required to accept the least restrictive alternative to carry out its purpose. Rather, " ' "the means selected shall have a real and substantial relation to the object sought to be attained," ' " *Coffee-Rich, Inc.*

401

*v. Department of Agriculture,* 70 Wis. 2d 265, 273, 234 N.W.2d 270, 274 (1974) (*quoting Chicago & N.W.R. Co.,* 27 Wis. 2d at 521 (emphasis added)).

The United States Supreme Court reviewed an extensive police grooming standard in *Kelley v. Johnson,* 425 U.S. 238 (1976). The Court, however, did not take into consideration whether the right to freedom of appearance was fundamental; it merely assumed that it was a fourteenth amendment liberty interest and proceeded to apply a rational basis analysis. In the majority opinion Justice Rehnquist wrote:

> The constitutional issue to be decided by these courts is whether petitioner's determination that such regulations should be enacted is so irrational that it may be branded 'arbitrary,' and therefore a deprivation of respondent's 'liberty' interest in freedom to choose his own hairstyle.

*Id.* at 248.

Justice Powell's concurring opinion discussed the need to balance the individual's interests against those of the state. He wrote:

> When the State has an interest in regulating one's personal appearance, as it certainly does in this case, there must be a weighing of the degree of infringement of the individual's liberty interest against the need for the regulation. This process of analysis justifies the application of a reasonable regulation to a uniformed police force that would be an impermissible intrusion upon liberty in a different context.

*Id.* at 249.

The Seventh Circuit Court of Appeals reviewed personal discretion as to one's hair length in *Holsapple v. Woods,* 500 F.2d 49 (7th Cir. 1974), *cert. denied* 419 U.S.

901. The plaintiff was a high school student who was suspended for allegedly violating the school's grooming code. He filed a complaint against the superintendent and school board and requested that the grooming policy be declared unconstitutional. The Seventh Circuit Court of Appeals affirmed the lower court and stated:

> [A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id.* at 52 *(quoting United States v. O'Brien,* 391 U.S. 367, 377 (1968), *rehearing denied* 393 U.S. 900).

*Pence v. Rosenquist,* 573 F.2d 395 (7th Cir. 1978), involved a part-time school bus driver who wore a concededly well-trimmed mustache contrary to an Illinois Office of Education rule requiring a "neat and clean appearance." *Id.* at 397. The driver claimed a violation of his liberty interest as guaranteed by the first and fourteenth amendments. The court held there was no rational relationship to a proper school purpose. It reasoned that "[t]here is not even a suggestion that plaintiff's mustache negatively affected his driving skills, or relationship with his passengers, nor that it tended to generate any kind of problem which endangered their health or safety." *Id.* at 398.

In *Breen v. Kahl,* 419 F.2d 1034, 1036 (7th Cir. 1969), *cert. denied* U.S. 937, the Seventh Circuit Court of Appeals discussed student hair length and personal appearance. The opinion stated that "[t]he right to wear one's hair at any length or in any desired manner is an

ingredient of personal freedom protected by the United States Constitution." *Id. (citing Griffin v. Tatum,* 300 F. Supp. 60 (M.D. Ala. 1969); *Zachary v. Brown,* 299 F. Supp. 1360 (N.D. Ala. 1969); *Richards v. Thurston,* 304 F. Supp. 449 (N.D. Mass 1969)).

The form of regulation chosen must bear a reasonable or rational relationship to the public good being pursued by the government and must not unreasonably restrict the particular rights being curtailed. *Boden v. Milwaukee,* 8 Wis. 2d 318, 325, 99 N.W.2d 156 (1959). The asserted governmental interest in creating the Kenosha ordinance is to further the "cleaning up of the image of the city." While the city of Kenosha is to be commended for its desire to improve the image, if needed, of the areas and people within its governmental and geographic limits, the code was adopted only on the basis of the subjective complaints of members of the police department and its officials. There were no studies conducted which showed the cab drivers were responsible for any tarnished image of the city. No data were presented indicating that visitors to the city felt they would enjoy their time in Kenosha more if the cab drivers wore uniforms or were differently dressed. Without extrinsic evidence showing a negative effect of the cab drivers' appearance on the visitors' opinions of the quality of life in Kenosha, the code lacks substantial justification for regulating driver appearance.

This court stated in *Milwaukee Brewers v. DH&SS,* 130 Wis. 2d 79, 98, 387 N.W.2d 254 (1986), that as to the presumption of constitutionality, we would assume facts to exist favoring the constitutional presumption until shown otherwise. Despite the application of this presumption to the present case, we conclude that the challengers have shown beyond a reasonable doubt that there

lacks a rational basis for the ordinance in accomplishing its stated purpose.

*By the Court.*—The judgment of the Kenosha county circuit court is reversed.