STATE of Wisconsin, Plaintiff-Respondent,

v.

Alan L. RADKE, Defendant-Appellant.†

Court of Appeals

*No. 01–1879–CR. Submitted on briefs March 14, 2002.—Decided May 23, 2002.*

2002 WI App 146

(Also reported in 647 N.W.2d 873.)

† Petition to review granted 9-26-02.

448

451

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William E. Schmaal*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Sandra L. Nowack*, assistant attorney general.

Before Dykman, Deininger and Lundsten, JJ.

¶ 1. DYKMAN, J. Alan Radke appeals from a judgment of conviction for a repeated sexual assault of the same child. Because Radke had been convicted

previously of another child sexual assault, the circuit court sentenced him to life in prison without parole, as required by Wis. Stat. § 939.62(2m)(b)1 and (c) (1997–98),[1] popularly referred to as the "two strikes" law. Radke argues that the sentencing scheme is a violation of substantive due process and is therefore unconstitutional. Because we conclude that the two-strikes law is constitutional as applied to Radke, we affirm.

## BACKGROUND

¶ 2.   The State charged Alan Radke with engaging in repeated sexual assaults of the same child, contrary to Wis. Stat. §§ 948.025(1) and 948.02(1).[2] The information alleged that Radke had sexually assaulted the same child at least three times between January 1, 1997, and March 12, 1999. In addition, because Radke had been previously convicted of first-degree sexual assault of a child under Wis. Stat. § 940.225(1)(d) (1983–84),[3] the State also charged Radke as a "persistent repeater" under Wis. Stat. § 939.62(2m).

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted. Wisconsin Stat. § 939.62(2m) was amended slightly in 1999 to reflect a change in numbering in another statute that is cross-referenced in Wis. Stat. § 939.62(2m)(a)2m.b. *See* 1999 Wis. Act 188, § 16. The substance of Wis. Stat. § 939.62(2m) remains unchanged.

[2] Wisconsin Stat. § 948.025(1) provides: "Whoever commits 3 or more violations under s. 948.02(1) or (2) within a specified period of time involving the same child is guilty of a Class B felony."

Wisconsin Stat. § 948.02(1) provides: "Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years is guilty of a Class B felony."

[3] Wisconsin Stat. § 940.225 (1983–84) provides in part:

¶ 3. After pleading not guilty, Radke filed a motion to dismiss the repeater charge, arguing that Wis. Stat. § 939.62(2m)(a)1m.b, (b)2 and (c) was unconstitutional because it violated his right to due process. The circuit court denied the motion, and a jury trial ensued. The jury found Radke "guilty of repeated acts of sexual assault of the same child, as charged in the information." As required by § 939.62(2m)(c), the circuit court sentenced Radke to life in prison without the possibility of parole or extended supervision. The circuit court denied Radke's motion for postconviction relief, and Radke appeals.

## DECISION

■

¶ 4. The issue Radke raises is whether the "two strikes" provisions of Wis. Stat. § 939.62(2m), enacted by 1997 Wis. Act 326, are unconstitutional on their face. This is a question of law that we review de novo. *See State v. Lindsey*, 203 Wis. 2d 423, 432, 554 N.W.2d 215 (Ct. App. 1996). To succeed on a facial challenge, Radke "must establish that no set of circumstances exists under which [the two-strikes law] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Therefore, if the law is constitutional as applied to Radke, the law is not unconstitutional on its face. Further, Radke must overcome the statute's presumption of constitutionality and demonstrate that the provisions are unconstitutional beyond a reasonable doubt

---

(1) FIRST DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class B felony:

. . . .

(d) Has sexual contact or sexual intercourse with a person 12 years of age or younger.

before we may invalidate them. *See Safe Water Ass'n v. City of Fond du Lac*, 184 Wis. 2d 365, 375, 516 N.W.2d 13 (Ct. App. 1994).

¶ 5. The relevant portions of WIS. STAT. § 939.62(2m) provide:

> (b) The actor is a persistent repeater if one of the following applies:
>
> . . . .
>
> 2. The actor has been convicted of a serious child sex offense on at least one occasion at any time preceding the date of violation of the serious child sex offense for which he or she presently is being sentenced under ch. 973, which conviction remains of record and unreversed.
>
> . . . .
>
> (c) If the actor is a persistent repeater, the term of imprisonment for the felony for which the persistent repeater presently is being sentenced under ch. 973 is life imprisonment without the possibility of parole or extended supervision.

Under these provisions, a court must sentence a defendant to life in prison without parole upon a second conviction for a "serious child sex offense."[4] Radke argues that this violates substantive due process.

---

[4] The "serious child sex offenses" include: sexual assault of a child (a Class B felony), engaging in repeated acts of sexual assault of the same child (a Class B felony), sexual exploitation of a child (a Class C felony), causing a child to view or listen to sexual activity (a Class C or D felony), incest with a child (a Class BC felony), child enticement (a Class BC felony), soliciting a child for prostitution (a Class BC felony), sexual assault of a student by a school instructional staff person (a Class D felony),

¶ 6.   Both the Wisconsin and United States Supreme Courts agree that the Due Process Clause protects more than just "fair process." *Washington v. Glucksberg,* 521 U.S. 702, 719 (1997); *Dowhower v. West Bend Mut. Ins. Co.,* 2000 WI 73, ¶ 13, 236 Wis. 2d 113, 613 Wis. 2d 557. Guaranteed under the Fourteenth Amendment to the United States Constitution[5] and article I, §§ 1 and 8 of the Wisconsin Constitution,[6]

abduction of another's child (a Class B or C felony), and interference with custody (a Class C or E felony). *See* Wis. Stat. § 939.62(2m)(a)1m.

In contrast to prior convictions under Wis. Stat. § 939.62(2), the State may charge an individual as a persistent repeater under § 939.62(2m) regardless how old the prior conviction is.

[5] The Fourteenth Amendment provides in relevant part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."

[6] Article I, § 1 provides in part: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness."

Article I, § 8 provides in part:   "No person may be held to answer for a criminal offense without due process of law."

In some cases, the supreme court has indicated that substantive due process is protected by article I, § 1 of the Wisconsin Constitution. *See, e.g., Dowhower v. West Bend Mut. Ins. Co.,* 2000 WI 73, ¶ 12, 236 Wis. 2d 113, 613 Wis. 2d 557; *Reginald D. v. State,* 193 Wis. 2d 299, 306–07, 533 N.W.2d 181 (1995). In others, however, it has cited article I, § 8 as the location of the right. *See, e.g., Thorp v. Town of Lebanon,* 2000 WI 60, ¶ 45, 235 Wis. 2d 610, 612 N.W.2d 59; *State v. Post,* 197 Wis. 2d 279, 301 n.10, 541 N.W.2d 115 (1995). It is not clear from the court's discussions whether substantive due process protections in §§ 1 and 8 are identical or if different aspects of the right are

substantive due process bars, among other things, certain arbitrary government actions, regardless of the fairness of the procedures used to implement them. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Thorp v. Town of Lebanon*, 2000 WI 60, ¶ 45, 235 Wis. 2d 610, 612 N.W.2d 59. Though there are differences in the language of the state and federal due process clauses, the supreme court has held that the two are "functional[ly] equivalent," *Reginald D. v. State*, 193 Wis. 2d 299, 307, 533 N.W.2d 181 (1995), and that "there is no substantial difference" between the protections guaranteed by them, *State ex rel. Sonneborn v. Sylvester*, 26 Wis. 2d 43, 50, 132 N.W.2d 249 (1965).

■

¶ 7.  Unless it infringes on a "fundamental right," a statute will generally survive a substantive due process challenge if it is rationally related to a legitimate government interest. *Glucksberg*, 521 U.S. at 728; *State v. McManus*, 152 Wis. 2d 113, 130, 447 N.W.2d 654 (1989). Radke does not argue for a heightened standard of review, so this is the standard that we apply.

■

¶ 8.  As the State notes, the drafting records for 1997 Wis. Act 326, which created the "two strikes, you're out" sentencing scheme for certain child sex offenses, do not expressly indicate the purpose for which it was enacted. Undoubtedly, however, at least one of the purposes behind the act was the same as other statutes involving sexual offenders: to protect the public, in this case children, from sexual assaults. *Cf.*

guaranteed by both provisions. *See also Peppies Courtesy Cab Co. v. City of Kenosha*, 165 Wis. 2d 397, 399 n.1, 475 N.W.2d 156 (1991) (citing Wis. Const. art. I, §§ 1, 11, 13 and 22 as protecting "inherent rights of due process and liberty interests").

457

*State v. Bollig*, 2000 WI 6, ¶ 21, 232 Wis. 2d 561, 605 N.W.2d 199 (stating that a primary purpose of sex offender registration under WIS. STAT. § 301.45 is to protect the public); *State v. Carpenter*, 197 Wis. 2d 252, 271, 541 N.W.2d 105 (1995) (stating that a primary purpose of commitment for sexually violent persons under WIS. STAT. ch. 980 is to protect the public); *State v. Koenck*, 2001 WI App 93, ¶ 9, 242 Wis. 2d 693, 626 N.W.2d 359 (stating that aim of child enticement statute is to protect children). There is no question that protecting children from harm is a legitimate purpose.

¶ 9.   Statements made by the act's sponsor, Representative Mark Green, while the legislature was considering the two-strikes law, suggest that a specific reason for the law was the perceived high recidivism rate among child sex offenders. *See* Amy Rinard, *Life term for child sex crimes advances*, MILW. J. SENT., Nov. 6, 1997, at 1 (quoting Representative Green as stating that "pedophiles have the highest rate of repeat offenses"); Mike Flaherty, *Measure puts repeat sex offenders in prison for life*, WIS. ST. J., Nov. 6, 1997, at 1A (quoting Representative Green as stating that average pedophile claims 300 victims). We may consider these statements in determining the purpose of a statute. *See State Public Defender v. Circuit Court, Branch 11, Dane County*, 184 Wis. 2d 860, 868–69, 517 N.W.2d 144 (1994).[7]

---

[7] The State relies on an article, written after 1997 Wis. Act 326 was enacted, that Representative Green wrote with respect to a proposed *federal* "two strikes" law. Ex post facto explanations from legislators, however, cannot be relied on to determine legislative intent. *RURAL v. Public Serv. Comm'n*, 2000 WI 129, ¶ 39 n.20, 239 Wis. 2d 660, 619 N.W.2d 888.

¶ 10.   Although 1997 Wis. Act 326 does not contain any legislative findings supporting a view that sex offenders have high recidivism rates, this is not necessarily required. *See United States v. Carolene Prods. Co.*, 304 U.S. 144, 152 (1938) ("Even in the absence of [legislative findings], the existence of facts supporting the legislative judgment is to be presumed.").[8] We

---

[8] Although studies have come to varying conclusions, there is at least some evidence supporting the view that child sex offenders, particularly those with prior convictions, have a high recidivist rate. *See* V.L. Quinsey, et. al, *Actuarial Prediction of Sexual Recidivism,* 10 J. INTERPERSONAL VIOLENCE 85 (1995) (concluding that reoffense rate for child molesters with prior convictions is relatively high); R.K. Hanson, et. al, *Long-term Recidivism of Child Molesters,* 61 J. OF CONSULTING & CLINICAL PSYCHOLOGY 646 (1993) (finding that child molesters are at risk to reoffend sexually throughout their lives). *But see* Lisa Kavanaugh, *Massachusetts's Sexually Dangerous Person's Legislation,* 35 HARV. C.R.-C.L. L. REV. 509, 511 n.12 (2000) (citing studies that have concluded that recidivist rate for sexual offenders is *lower* than for other violent offenders); Margaret A. Alexander, *Quasi-Meta-Analysis II, Oshkosh Correctional Institution,* State of Wisconsin Department of Corrections/Oshkosh Correctional Institution report (1994) (finding that thirteen percent of sex offenders are rearrested).

Other researchers have observed that "relatively little can be concluded from extant studies, primarily because of the methodological variability of these studies." Robert A. Prentky, et. al, *Recidivism Rates Among Child Molesters and Rapists: A Methodological Analysis,* 21 LAW & HUMAN BEHAVIOR 635, 636 (1997). Despite the uncertainty in this area, based on the importance of the interest in protecting potential victims from sexual assault, we cannot conclude that the legislature acted irrationally when it chose to err on the side of protecting the public in lieu of permitting circuit courts to make individualized

459

conclude that the legislature's interest in protecting children is rationally related to a sentencing scheme that requires a sentence of life in prison without parole upon a second conviction for sexually assaulting a child, as was the case with Radke.[9]

¶ 11. Moreover, as we noted in *Lindsey*, our supreme court "has long recognized" that it is not arbitrary or irrational to impose a more severe punishment for a second or subsequent offense. 203 Wis. 2d at 444. In *State v. Hahn*, 2000 WI 118, 238 Wis. 2d 889, 618 N.W.2d 528, the supreme court stated that the legislature has a valid interest " 'in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.' " *Id.* at ¶ 33 (quoting *Rummel v. Estelle*, 445 U.S. 263, 276 (1980)). We cannot conclude that it would be irrational to believe that an individual who has committed two sexual assaults against a child is likely to do so again and unlikely to be rehabilitated.[10] *But see Post*, 197 Wis. 2d at 307–11 (concluding that *treatment* of

determinations regarding sentencing. *See State v. Post*, 197 Wis. 2d 279, 310–11, 541 N.W.2d 115 (1995).

[9] Because the two-strikes law does not violate substantive due process as it applies to child sexual assaults, we need not determine whether a rational basis exists with respect to all of the crimes classified as "serious child sex offenses" under WIS. STAT. § 939.62(2m)(a)1m.

[10] Radke does not argue that the two-strikes law inflicts cruel and unusual punishment, so we do not address that issue. However, *see State v. Lindsey*, 203 Wis. 2d 423, 438, 554 N.W.2d 215 (Ct. App. 1996) (holding that three-strikes provision of WIS. STAT. § 939.62(2m) is not cruel and unusual punishment).

mental illness is a primary goal of legislature in requiring civil commitment for sexually violent persons).

¶ 12. Radke cites to *Peppies Courtesy Cab Co. v City of Kenosha*, 165 Wis. 2d 397, 475 N.W.2d 156 (1991), as supporting his claim that the two-strikes portion of the persistent repeater statute violates substantive due process. In *Peppies*, the supreme court struck down an ordinance imposing a grooming code on taxicab drivers, holding that the ordinance violated "the drivers' inherent rights of due process and liberty interests." *Id.* at 398–99, 404–05.

¶ 13. The facts in *Peppies* have little similarity to Radke's situation. At issue is the validity of a sentencing scheme, not a grooming code. We agree with Radke, however, that the methodology the *Peppies* court used in analyzing the substantive due process issue provides Radke some support. Although the court did not suggest that individuals have a "fundamental right" regarding how they dress or otherwise indicate it was applying a heightened standard of review, the standard that the court articulated was whether the ordinance had a "real and substantial relation" to a legitimate government purpose. *Id.* at 401. On its face at least, *substantial* relation appears more demanding than *rational* relation. *See United States v. Virginia*, 518 U.S. 515, 533 (1996) (stating that gender discrimination by the state is unconstitutional unless it is "substantially related" to an important government objective). Further, the court concluded that the ordinance lacked "substantial justification" because the city had not produced sufficient evidence that the ordinance would further the interest of "cleaning up of the image of the city." *Peppies*, 165 Wis. 2d at 404.

¶ 14. We first note that cases decided by the supreme court subsequent to *Peppies* have not mentioned the "real and substantial relation" standard articulated in that case. Rather, the standard that the supreme court has applied in substantive due process cases since *Peppies* has been the one set forth in ¶ 7: whether the statute bears a rational relationship to a legitimate government interest. *Reginald D.*, 193 Wis. 2d at 307; *City of Milwaukee v. Kilgore*, 193 Wis. 2d 168, 189, 532 N.W.2d 690 (1995); *Szarzynski v. YMCA, Camp Minikani*, 184 Wis. 2d 875, 889, 517 N.W.2d 135 (1994). Under this test, a statute is not necessarily unconstitutional if the legislature has failed to support its conclusions. To the extent that *Peppies* is inconsistent with subsequent decisions by the supreme court, it is those decisions that we must follow. *See State v. Ameritech Corp.*, 185 Wis. 2d 686, 700, 517 N.W.2d 705 (Ct. App. 1994), *aff'd,* 193 Wis. 2d 150, 532 N.W.2d 449 (1995).

¶ 15. Regardless whether *Peppies* is still good law, however, it is nevertheless readily distinguishable. Although legislative history does not indicate that the legislature's conclusion regarding recidivism of child sex offenders was based on any studies or empirical data, as noted in ¶ 10 n.8, there is at least some evidence supporting a conclusion that child sex offenders have a high recidivism rate. Further, even under the *Peppies* standard, the court suggested that it was necessary to "balance the individual's interests against those of the state." 165 Wis. 2d at 402 (citing *Kelly v. Johnson*, 425 U.S. 238, 249 (1976) (Powell, J., concurring)). Because the interest in protecting children from

sexual assault is clearly more important than the interest in maintaining a "clean" city image, conclusive proof is not required.

¶ 16.  Radke nevertheless contends that the irrationality of the two-strikes law is illustrated by the potential effects that it could have on child sex offenders' behavior. Specifically, Radke argues that the law encourages second-time offenders to kill their victims in addition to sexually assaulting them so that the child is prevented from later testifying. This same objection was made by the law's opponents in the legislature before it was passed,[11] who also argued that the law prevents judges from making an individualized determination regarding sentencing in situations where life in prison may not be an appropriate sentence,[12] and

---

[11] *See* Mike Flaherty, *Measure puts repeat sex offenders in prison for life,* WIS. ST. J., Nov. 6, 1997, at 1A. Representative Shirley Krug stated that she was "concerned we'll see murders increase" because offenders will not want to leave witnesses to the crime. *Id.*

[12] *See* Lawrence Sussman, *Sex crimes bill flawed,* MILW. J. SENT., Nov. 10, 1997, at 1. Representative Michael Leman stated, "Without knowing the facts of an individual case, I don't believe that we as legislators should be the judge and the jury." *Id.* Representative Glenn Grothman worried that the law could be applied to a sixteen-year-old boy who had consensual sex with two fifteen-year-old girls. *Id.*

Radke does not argue that a statute which takes all sentencing discretion away from the circuit court violates the doctrine of separation of powers. However, *compare State v. Lindsey,* 203 Wis. 2d 423, 441, 554 N.W.2d 215 (Ct. App. 1996) (holding that "three strikes" sentencing provision does not violate separation of powers) *with Oehler v. State,* 202 Wis. 530, 536, 232 N.W. 866 (1930) ("[T]he judicial function of fixing the

that it could make it more difficult for prosecutors to convict first-time offenders because they will be less likely to make plea agreements.[13] While the wisdom of the two-strikes law can be debated, whether it is the most appropriate solution to the problem of recidivist child sex offenders is not for this court to decide. *See Kahn v. McCormack*, 99 Wis. 2d 382, 390, 299 N.W.2d 279 (Ct. App. 1980) (quoting *Ferguson v. Skrupa*, 372 U.S. 726, 731–32 (1963)). That the law might have negative side effects does not make it unconstitutional. The legislature could rationally conclude that the economic, social and legal costs of allowing individualized sentencing determinations of recidivist child sex offenders were greater than those involved with eliminating sentencing discretion and parole for those crimes upon a second conviction.

¶ 17. Radke also argues that the two-strikes portion of Wis. Stat. § 939.62(2m) is arbitrary and irrational because it is "logically inconsistent" with the "three strikes" portion of the persistent repeater statute. Radke explains that while individuals convicted of "serious child sex offenses" must be sentenced to life in prison without parole after *two* convictions, individuals convicted of "serious felonies," must be convicted *three* times before the statute requires such a sentence. *Compare* Wis. Stat. § 939.62(2m)(b)1 *with* Wis.

punishment . . . quite likely was vested in [the judiciary] by the constitution according to the practice of common law. A statute that attempted [to take this power away] would quite likely have to be held unconstitutional.").

[13] *See* Amy Rinard, *Life term for child sex crimes advances,* Milw. J. Sent., Nov. 6, 1997, at 1. Representative William Murat stated, "If you really want to get at these cases, it's important for [district attorneys] to have the tools to get after the first offenders." *Id.*

STAT. § 939.62(2m)(b)2.[14] This is irrational, Radke argues, because the crimes included as "serious child sex offenses" range from Class B felony offenses to Class E felony offenses while the crimes designated as "serious felonies" range from Class A to Class C felony offenses. Because it is not rational to subject someone who has committed two Class B felonies, such as child sexual assault, to "a more severe penalty" than someone who has committed two Class A felonies, such as first-degree intentional homicide, Radke concludes that the two-strikes law is unconstitutional.

---

[14] "Serious felonies" under the persistent repeater statute include first-degree intentional homicide (a Class A felony); first-degree reckless homicide (a Class B felony); felony murder; second-degree intentional homicide (a Class B felony); homicide by intoxicated use of a vehicle or firearm (a Class B felony); aggravated battery (a Class C felony); performing a "partial birth abortion" (a Class A felony); aggravated battery to an unborn child (a Class C felony); mayhem (a Class B felony); first-degree sexual assault (a Class B felony); second-degree sexual assault (a Class BC felony); taking hostages (a Class A or Class B felony); kidnapping (a Class A or Class B felony); causing death by tampering with household products (a Class A felony); arson (a Class B felony); armed burglary (a Class B felony); carjacking (a Class A or Class B felony); armed robbery (a Class B felony); assault by a prisoner (a Class C felony); soliciting a child to commit a felony (a Class B or C felony); use of a child to commit a Class A felony; and manufacture, distribution or delivery of a controlled substance, or possession with intent to manufacture, distribute or deliver, if the offense is punishable by a maximum prison term of thirty years or more. *See* WIS. STAT. § 939.62(2m)(a)2m.a and b. In addition, the same crimes that are classified as "serious child sex offenses" are also classified as "serious felonies." Section 939.62(2m)(a)2m.b.

¶ 18. With respect to this argument, we repeat that the standard for determining whether a statute violates substantive due process is whether it is rationally related to a legitimate government interest. We have concluded, with respect to the crimes for which Radke was convicted, that the two-strikes law is. Radke does not point to any Wisconsin or Supreme Court authority suggesting a statute violates *substantive due process* when it is inconsistent with other statutes. Rather, Radke's argument is essentially one of equal protection.

¶ 19. That Radke is asserting an equal protection claim is demonstrated by his reliance on *State v. Asfoor*, 75 Wis. 2d 411, 440–41, 249 N.W.2d 529 (1977). In *Asfoor*, the supreme court held that the penalty provision of WIS. STAT. § 940.24(1) violated equal protection because it made *injury* by negligent use of a weapon a felony, while *homicide* by negligent use of a weapon under WIS. STAT. § 940.08(1) was a misdemeanor. 75 Wis. 2d at 440–41. The court wrote: "We are unable to conceive of any reason to support the statutory discrimination of the legislature . . . . The irrationality of the classification results from the felony being imposed for causing injury and the misdemeanor for causing death." *Id.* Radke's challenge of WIS. STAT. § 939.62(2m) is similar in that he is arguing that there is no rational basis for imposing a "more severe penalty" on a defendant convicted of a "serious child sex offense" that is a Class B felony than on a defendant convicted of a "serious felony" that is a Class A felony. *See also State v. Hanson*, 182 Wis. 2d 481, 513 N.W.2d 700 (Ct. App. 1994) (analyzing under equal protection defendant's

challenge to legislature's classification of child enticement as a Class C felony and exposure to a child as a Class A misdemeanor).

¶ 20. As with due process, the supreme court has interpreted the Equal Protection Clauses in the Wisconsin and United States Constitutions as being equivalent. *Vincent v. Voight*, 2000 WI 93, ¶ 80 n.26, 236 Wis. 2d 588, 614 N.W.2d 388. Equal protection applies when a statute treats differently those that are similarly situated. *Wisconsin Prof'l Police Ass'n v. Lightbourn*, 2001 WI 59, ¶ 221, 243 Wis. 2d 512, 627 N.W.2d 807. Radke is challenging the way the legislature has classified two groups of criminal defendants with respect to mandatory sentencing rules. Defendants convicted of two "serious child sex offenses" are thus similarly situated to defendants convicted of two "serious felonies" for the purpose of this case. *See State v. Block*, 222 Wis. 2d 586, 592, 587 N.W.2d 914 (Ct. App. 1998) (applying equal protection to classification of defendants convicted of "serious felonies" and those convicted of other crimes). Generally, differences in the treatment of criminal offenders are reviewed under a rational basis test. *State v. Avila*, 192 Wis. 2d 870, 880, 532 N.W.2d 423 (1995) (citing *Hilber v. State*, 89 Wis. 2d 49, 54, 277 N.W.2d 839 (1979)); *see also Block*, 222 Wis. 2d at 592. "Under a rational basis test, a statute is unconstitutional if the legislature applied an irrational or arbitrary classification when it enacted the statute." *Lightbourn*, 2001 WI 59 at ¶ 222.

¶ 21. In addition to *Asfoor*, Radke also relies on three cases from Illinois: *People v. Wisslead*, 446 N.E.2d 512 (Ill. 1983), *People v. Wagner*, 433 N.E.2d 267 (Ill. 1982), and *People v. Bradley*, 403 N.E.2d 1029 (Ill. 1980). In each of those cases the Illinois Supreme

Court, similar to the court in *Asfoor*, declared unconstitutional a criminal sentencing law because the legislature had prescribed a greater penalty for "less serious" crimes than for "more serious" crimes. *Wisslead*, 446 N.E.2d at 514–15 (holding unconstitutional statute prescribing greater penalty for armed violence based on unlawful restraint than for kidnapping while armed with a dangerous weapon); *Wagner*, 433 N.E.2d at 270 (holding unconstitutional provision prescribing greater penalty for delivery of noncontrolled substance than for delivery of controlled substance); *Bradley*, 403 N.E.2d at 1032 (holding unconstitutional statute prescribing greater penalty for possession of controlled substance than for distributing a controlled substance).

¶ 22.   Unlike the defendants in *Asfoor* and the Illinois cases, Radke does not argue that child sexual assault, which is designated as a "serious child sex offense" and thus subject to the two-strikes law, is inherently "less serious" than the crimes designated as "serious felonies," and thus subject to the three-strikes law. Rather, he argues that because the *legislature* has classified some of the "serious felonies" as Class A felonies, it is irrational for the legislature to then prescribe a greater penalty after a second conviction (mandatory life in prison without parole) to child sexual assaults, which are at most Class B felonies, than to Class A "serious felonies," which do not require life sentences without parole until a third conviction.

¶ 23.   Radke's argument fails because, unlike the statute in *Asfoor*, there is a rational basis for imposing a "two strikes" sentencing scheme on defendants convicted of child sexual assault while providing "three strikes" for defendants convicted of Class A "serious felonies." In *Asfoor* and the Illinois cases, the penalty

provisions being compared were in two statutes prohibiting different degrees of very similar crimes (negligent injury versus negligent homicide, possession of a controlled substance versus delivery of a controlled substance, etc). Because the nature of the crimes was essentially the same, there was no rational basis for imposing a greater penalty on the crime that was essentially a lesser included offense of the other. ·

¶ 24.   Child sexual assault cannot be compared to the Class A "serious felonies" in the same way that negligent injury and negligent homicide can be compared, because there are differences in the nature of child sexual assault and Class A "serious felonies." In contending that the two-strikes sentencing scheme under Wis. Stat. § 939.62(2m) is irrational, Radke assumes that the only purpose the legislature has in excluding the possibility of parole is to punish the crime more severely. Although retribution may have been one motivating factor the legislature had in enacting the two-strikes law,[15] as discussed above, the legislature was also likely motivated by a desire to protect children from reoffenders.

¶ 25.   The crimes classified as "serious felonies" under Wis. Stat. § 939.62(2m) that are also designated as Class A felonies include: first-degree intentional homicide, taking hostages, kidnapping with intent to cause another to transfer property in order to obtain the release of the victim, intending harm and causing death by tampering with household products, and causing death by taking a vehicle without consent of the

---

[15] *See* Mike Flaherty, *Measure Puts Sex Offenders in Prison for Life,* Wis. St. J., Nov. 6, 1997, at 1A (quoting Representative Mark Green as referring to child sex offenders as "monsters").

owner while possessing a dangerous weapon.[16] These are all non-sexual violent crimes, usually resulting in the death of the victim. Although the issue can be debated, the legislature could have rationally concluded that those who have committed child sexual assaults are more likely to continue to reoffend after they are released than are those who have committed non-sexual violent crimes. Thus, the legislature could also rationally determine that the "more serious" crime of intentional homicide could be permitted a third strike while the "less serious" crime of child sexual assault could not.[17] We therefore conclude that the two strikes law does not violate substantive due process or equal protection as it was applied to Radke and, thus, that it is not unconstitutional on its face.

¶ 26.    In addition to challenging the constitutionality of the two-strikes law, Radke also argues that the crime of which he was convicted, repeated sexual as-

---

[16] Performing a "partial-birth abortion," as defined by Wis. Stat. § 940.16, is also designated as a Class A "serious felony" under Wis. Stat. § 939.62(2m)(a)2m.b. Section 940.16, however, is unconstitutional. *Hope Clinic v. Ryan*, 249 F.3d 603 (7th Cir. 2001); *see Stenberg v. Carhart*, 530 U.S. 914 (2000). Therefore, the two-strikes law cannot be applied to this conduct.

[17] Radke argues only that it is irrational to inflict a more severe penalty on Class B felons than on Class A felons. He does *not* argue that it is irrational to prescribe a harsher penalty for one group of Class B felons than for *another* group of Class *B* felons. We therefore do not consider, for example, whether there is a rational basis for differentiating between those convicted twice of first-degree sexual assault of an adult (a Class B "serious felony" under Wis. Stat. § 939.62(2m)(a)2m.b) and those convicted twice of first-degree sexual assault of a child (a Class B "serious child sex offense" under Wis. Stat. § 939.62(2m)(a)1m.a.).

sault of a child, is unconstitutional. Specifically, he contends that Wis. Stat. § 948.025 violates due process "because it authorizes the jury to return a guilty verdict even if the jury does not unanimously agree which of the alleged acts of sexual assault within the specified period of time constituted the requisite '3 or more violations' for conviction." As Radke acknowledges, the supreme court has already decided this issue against him in *State v. Johnson*, 2001 WI 52, 243 Wis. 2d 365, 627 N.W.2d 455, and we are bound by its decision. *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997).

    *By the Court.*—Judgment affirmed.